JACK WINTER, INC., a corporation, Plaintiff,

v.

KORATRON COMPANY, Inc., a corporation, Defendant.

KORATRON COMPANY, Inc., a corporation, Counterclaim Claimant,

v.

JACK WINTER, INC., a corporation, Counterclaim Defendant.

LEVI STRAUSS & CO., a corporation, Plaintiff,

v.

KORATRON COMPANY, Inc., a corporation, et al., Defendants.

KORATRON COMPANY, Inc., a corporation, Third-Party Plaintiff,

v.

DAN RIVER MILLS, INCORPORATED, a corporation, Third-Party Defendant.

Civ. A. Nos. 49392, 49913, 47273, 50063, 49558, 51281, 49671, 51301, 51654, 51691 and C–69471.

United States District Court, N. D. California.

June 30, 1970.

Brobeck, Phleger & Harrison, by Robert S. Daggett, Richard Wydick, San Francisco, Cal., for Koratron Co., Inc. and Koracorp.

Flam & Flam, by Fred Flam, Los Angeles, Cal., for A-1 Cotson.

Morgan, Finnegan, Durham & Pine, by John C. Vassil, New York City, Hunton, Williams, Gay, Powell & Gibson, by Lewis T. Booker, Richmond, Va., for Dan River Mills, Inc.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, by Bernard Ouziel, Curtis, Morris & Safford and Robert D. Spille, New York City, for Deering-Millikin, Inc.

Richards, Harrison & Hubbard, by D. Carl Richards, Dallas, Tex., for Haggar & Amory.

Heller, Ehrman, White & McAuliffe, by M. Laurence Popofsky, Stephen V. Bomse, San Francisco, Cal., Limbach, Limbach & Sutton, by John P. Sutton, San Francisco, Cal., for Levi Strauss & Co.

Bronson, Bronson & McKinnon, by Charles A. Legge, San Francisco, Cal., for Metro Pants Co.

Watson Leavenworth Kelton & Taggart, Albert Robin and Thomas V. Heyman, New York City, for Henry I. Siegel Co., Inc. and Bayly Mfg. Co.

Phelps, Hall & Keller, and Glen E. Keller, Jr., Denver, Colo., for Bayly Mfg. Co.

King & Spalding and Charles M. Kidd, Atlanta, Ga., for Oxford Industries, Inc.

David Rabin, Greensboro, N. C., for Blue Bell, Inc.

Browne, Beveridge & DeGrandi and Dayton R. Stemple, Jr., Washington, D. C., for Salant & Salant and Standard Romper.

Margaret E. White, San Francisco, Cal., on behalf of the witness.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This cause is presently before us upon the motion of the adversaries to Kora-

Eckhoff & Hoppe, by Carl Hoppe, San Francisco, Cal., for Jack Winter, Inc.

tron to compel answers to certain questions propounded at the taking of the deposition of Arlington C. White, an attorney at law specializing in patent and trademark matters. White refused to answer a substantial number of questions asked by attorneys for the adversaries of Koratron on the ground that the information sought fell within the attorney-client privilege. Hence, there is drawn into question the entire scope of attorney-client privilege as applied to preparation and processing of a patent application.

White is a patent lawyer, and a member of the firm of White & White of San Francisco. He was employed by William K. Warnock and Frank G. Hubener at the time of the application. Warnock was acting on behalf of Koret of California, Inc., the predecessor of Koratron, for the purpose of preparing and submitting a patent application for what has been referred to as the, 432 Patent. White also consulted with Mr. Greenberg, an official of Koratron on numerous occasions as a "sort of general counsel." This took place within the time period 1965 to 1968. More specifically, he met with Greenberg and others in the fall and winter of 1965, at the time of the negotiating of the agreement between Koratron and Dan River, which contract is an important focal point in this litigation. It has given rise to the third party complaint asserted by Koratron against Dan River.

The questions which White refused to answer may be placed into two general categories: (1) Those which sought to elicit the names of persons who gave information and samples to White for purposes of preparing the patent application; the substance of the information imparted; White's responses to persons consulting him with respect to the application; and White's knowledge of the processes described in the application; and (2) Those questions pertaining to discussions between White, Greenberg, and others in late 1965 and White's advice to Greenberg with respect to the Dan River agreement.

With respect to the second class of questions described above, counsel for Dan River (the third party defendant here) claims that any attorney-client privilege which might have existed has been waived by Koratron because the questions pertain to the causative factors which led to the Dan River agreement. Koratron claims that this contract was forced on it by Dan River and thus it is said that the question whether Koratron followed advice of counsel and acted voluntarily is in issue as is the question of the competence of White.

Those adversary to Koratron claim that none of the information sought by them may be withheld on the basis of attorney-client privilege. As to the questions relating to the patent application, they state:

1. No attorney-client privilege exists because the preparation and submission of a patent application is not legal work;

2. The attorney-client privilege is not applicable in this case because those adversary to Koratron have shown a prima facie case of fraud;

3. No attorney-client privilege arises with respect to information imparted to an attorney for the purpose of preparing a patent application since all information so imparted must be fully disclosed by the attorney to the Patent Office.

Initially, we note that we have directed the attorneys for those adversary to Koratron, including Dan River, to first proceed with the taking of depositions of the several clients Hubener, Warnock, Greenberg, and other individuals in volved with Koraton before further deposing White. This appears to be more practical especially since one of these witnesses has renounced the privilege. In this way much of the information which parties adversary to Koratron now seek may be acquired without subjecting White to the awkward and undignified procedure of requiring a lawyer to first reveal matters communicated to him by clients. We recognize

that even though much of it is not in law privileged, nevertheless, it should first come from the lips of the clients. It may, however, become necessary to depose White and the present rulings will govern any such further inquiry. The clients who are to be deposed are, of course, subject to these rulings.

■ Those adversary to Koratron first contend that questions relating to the patent application are not privileged because the preparation and submission of such an application is not the practice of law. They point out that there are patent practitioners who are not lawyers. We recognize this latter fact, but we are not prepared to hold that when a lawyer performs this work that *he* is not acting as such. Preparation of the application involves drafting of the specification and claims, advice to the client as to patentability, and the exercise of judgment. It cannot be said, therefore, that this does not bring into play legal skills. *See* Sperry v. Florida, ex rel. Florida Bar, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). Recent cases have limited the earlier cases of Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792 (D.Del.1954) and American Cyanamid Co. v. Hercules Powder Co., 211 F.Supp. 85 (D.Del.1962) to situations where the communication was between officers of a corporation and members of the patent department of the same corporation. *See, e. g.,* Chore-Time Equipment, Inc. v. Big Dutchman, Inc., 255 F.Supp. 1020 (W.D.Mich.1966). Where, as here, an outside attorney is consulted, we find it impossible to hold that his activities do not constitute the practice of law.

■ The decisive factor in the determination whether the communicated facts are privileged is the legal relationship between the applicant and the commissioner acting for the government. In making his application there is an undertaking by the applicant to reveal the invention. In return, he receives a restricted monopoly for a term of years. The key, however, is the revealing of the facts concerning his invention so that the particular art will be served.

The case law on the question of disclosure indicates that the application for a patent must fully reveal facts sufficiently explanatory to enable one skilled in the art to practice the invention. This rule must be construed to require a good faith disclosure of all factual information relevant to the granting of the patent. Thus, there is no room for partial disclosure or half truth. Obviously, a bona fide full disclosure is called for. This is born out by cursory examination of the applicable statutory provisions. 35 U.S.C. § 111 et seq. And see particularly Section 112. This relationship is much different from the adversary one which usually obtains. In the latter situation, parties are at liberty to lay back somewhat.

■■ Much of the information passing from client to attorney for purposes of preparation of patent application is technical material relating to descriptions of the products and/or processes sought to be patented, explanations of prior art, public use and sale, and samples of the product. So also in connection with the examination there is no room for game playing or witholding. As we view it, the attorney exercises no discretion as to what portion of this information must be relayed to the Patent Office. He must turn *all* such factual information over in full to the Patent Office pursuant to 35 U.S.C. § 112, and hence with respect to such material he acts as a conduit between his client and the Patent Office. As to all such matters it is concluded that a basic element required for the assertion of an attorney-client privilege is absent—that is, a communication not for relay but for the attorney's ears alone. 8 Wigmore, Evidence §' 2311 (1961).

After reviewing White's deposition, we have come to the conclusion that for the most part the information sought by

parties adversary to Koratron involves factual material of the type described above. Insofar as this is the case, the information called for is nonprivileged.

Parties adversary to Koratron have also claimed that any privilege that might have existed was vitiated because Koratron has participated in a fraud. Although we agree with the general principle that the attorney-client privilege is vitiated where a prima facie showing is made that the conversation between attorney and client involved the commission or preparation for the commission of a fraud, see Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933), we are unable to find at this juncture, at least, that fraud exists. Some equivocating is indeed evident and although we have the suspicion from reading the file wrapper that something might have been withheld or omitted, this falls short of a prima facie case of fraud and it would be unjust to give a commitment on this at an early stage in the proceedings.

Finally, we turn to Dan River's claim that Koratron has waived any attorney-client privilege relating to conversations between White, Greenberg, and other officers of Koratron relating to the Dan River Agreement. This claim is based upon the contention that Koratron has placed the competence of White in issue by virtue of its third party complaint and thus opened the door with respect to any conversations between White and others which might bear upon the competence of any advice given by him with respect to the Dan River Agreement.

Whether Koratron has specifically placed the competence of White into issue need not now be determined. It is enough to say that the content of statements by White to officers of Koratron with respect to the Dan River Agreement have clearly been placed in issue by Koratron's claim that the agreement was made under duress. Such a claim necessarily raises the issues of whether any advice was given as to the agreement what the content of that advice was, the competence of the advice, and whether such advice was in fact relied upon by Koratron when it entered into the agreement. We thus have a similar situation to that in which a plaintiff waives the doctor-patient privilege by placing the state of his health into issue. See Wigmore, Evidence § 2389. We have heretofore directed Dan River to first pursue the client in this instance also. However, we agree with Dan River that Koratron has waived any privilege as to communications between White and officers of Koratron involving the Dan River Agreement.

In summary, therefore, we direct the parties adversary to Koratron to depose Warnock, Hubener, Greenberg and others associated with Koret and/or Koratron in order to secure the information which they desire prior to any further deposing of Arlington C. White.

Furthermore, we conclude that:

1. Arlington C. White was engaged in the practice of law in preparing and submitting the application for the, 432 Patent;

2. Those communications by clients of White to him of factual information relevant to the application for the, 432 Patent cannot be said to have been confidential and hence are nonprivileged;

3. There has not as yet been a prima facie showing of fraud which would vitiate any attorney-client privilege which may exist;

4. By virtue of Koratron's third party complaint against Dan River, Koratron has waived any attorney-client privilege with respect to communications between White and officers of Koratron relating to the Dan River Agreement.

In accordance with the foregoing, it is hereby ordered that the directions embodied in this memorandum opinion and order will govern all future discovery proceedings in this case.