**BIO-RAD LABORATORIES, INC., Plaintiff,**

v.

**PHARMACIA, INC., et al., Defendants.**

No. C-88-2021 DLJ (JSB).

United States District Court, N.D. California.

Feb. 27, 1990.

Roger Cook, Townsend & Townsend, San Francisco, Cal., for Bio–Rad.

Robert Stier, Jr., Bernstein, Shur, Sawyer & Nelson, Portland, Me., and David Eiseman, Bronson, Bronson & McKinnon, San Francisco, Cal., for Pharmacia.

## ORDER AND OPINION RE DISCOVERY

JOAN S. BRENNAN, United States Magistrate.

Plaintiff, Bio–Rad Laboratories, Inc. ("Bio–Rad"), has brought an action against defendant, Pharmacia, Inc., et al. (hereinafter solely "Pharmacia") for patent infringement in a complaint filed May 26, 1988. On January 23, 1989, Judge Jensen referred the action for discovery purposes only to this court, pursuant to 28 U.S.C. § 636(b).

Bio–Rad alleges that Pharmacia "has actively induced others to infringe Bio–Rad's United States Patent No. 4,704,366 ('the '366 patent')," which generally describes a biochemical method to purify certain kinds of immunoglobulins (IgGs), especially monoclonal antibodies.[1] Defendant's Memorandum of Points and Authorities in Support of Motion ("Defendant's Memo."), at 1.

In its defense, Pharmacia asserts that the '366 patent is invalid and should never have been issued. "Among other things, Pharmacia contends that a 1982 scientific publication is prior art that barred certain claims of the '366 patent under 35 U.S.C. § 102, and rendered all its claims obvious under 35 U.S.C. § 103."[2] *Id.*, at 2.

Pharmacia claims the scientific publication, Biewenga, J. et al., "Binding of Human IgA Myeloma Proteins to Protein A," 11 *Immunological Communications* 189–200 (1982) ("the Biewenga article"), describes an extraction method similar to Bio–Rad's '366 process.

On January 18, 1990, the court heard Pharmacia's motions, pursuant to Fed.R. Civ.P. 37(a), to (1) compel counsel for Bio–Rad, M. Henry Heines ("Heines"), to respond to further deposition testimony; (2) to compel Bio–Rad's production of certain requested documents; and (3) for sanctions.

Roger Cook ("Cook") of Townsend and Townsend, San Francisco, appeared for Bio–Rad. Robert Stier, Jr. ("Stier"), Bernstein, Shur, Sawyer & Nelson, Portland, Me., and David Eiseman ("Eiseman"), Bronson, Bronson & McKinnon, San Francisco, represented Pharmacia.

---

1. These monoclonal antibodies "are commonly produced and contained in fluid or culture samples, and may be extracted from the samples in concentrated form using several well-known biochemistry techniques." Defendant's Memo., at 1.

2. 35 U.S.C. § 102 provides that "[a] person shall be entitled to a patent unless—(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent ..." 35 U.S.C.A. § 103 (West Supp.1989) states, in relevant part, "[a] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

## I. Factual Background

Heines is the attorney who in 1984 prepared and prosecuted the application for the '366 patent on behalf of Bio–Rad. Heines was then, and is now, a partner in the Townsend & Townsend law firm. Plaintiff's Memorandum in Opposition ("Plaintiff's Opp."), at 2. In June 1987, while the '366 patent application was still pending, Pharmacia sent a copy of the Biewenga article to the Townsend firm. Defendant's Memo., at 3.

On July 22, 1987, Heines filed an amendment with the Patent and Trademark Office ("Patent Office"). Heines criticized the study described in the Biewenga article and stated certain data contained therein was "impossible to duplicate, and accordingly [did] not enable one skilled in the art to practice what [was] taught in the article. For this reason, this article [had] no effect as prior art." Amendment Under Rule 312 and Disclosure of Possibly Relevant Information filed with the Patent and Trademark Office by Heines ("Amendment"), July 10, 1987, at 3, attached to Certificate of Compliance and Declaration of Eiseman in Support of Motion by Defendants for Order Compelling Discovery ("Decl. of Eiseman"), Exhibit B. Heines also sought to distinguish the mechanism described in the Biewenga article from the process involved in the '366 patent application. On November 3, 1987, the Patent Office issued the '366 patent.

The Townsend & Townsend law firm continues to represent Bio–Rad in this lawsuit in which the validity of the '366 patent is at issue. Trial counsel at Townsend & Townsend have consulted with Heines regarding trial preparation, specifically in an effort to characterize the Biewenga article. Heines has studied the article, shared his thoughts with trial counsel, and they have shared their thoughts with him. "These consultations have resulted in [Heines'] formation of specific legal theories and opinions concerning the scope, content, meaning and relevance of the prior art relied on by Pharmacia in its invalidity defenses, including the Biewenga publication." Plaintiff's Opp., at 3.

Heines is also "working with Townsend and Townsend as an expert consultant." Statement of Ellen Wise ("Wise"), counsel for Bio–Rad, at Deposition of M. Henry Heines, August 9, 1989, Vol. I, at 100 ("Dep. of Heines"); attached to Decl. of Eiseman, Exhibit D. Without the support of a declaration by counsel, Bio–Rad asserts Heines "possesses knowledge and opinions developed in the course of providing expert assistance to Bio–Rad's counsel as an employed consultant in preparation for trial." Plaintiff's Opp., at 11. Bio–Rad has not disclosed whether Heines will be called to testify at trial as an expert witness.

## II. Discussion

### A. Motion to Compel Further Deposition Testimony

At Heines' deposition, Pharmacia sought to discover his recollection of how the Biewenga article affected his prosecution of the '366 application, specifically questioning Heines as to references of IgG binding contained in the article. Dep. of Heines, at 102–04; attached to Decl. of Eiseman, Exhibit D. Pharmacia also questioned Heines with respect to his present opinion concerning the usefulness of information contained in the article and the representations he made to the Patent Office. See Dep. of Heines, at 105–07; attached to Decl. of Eiseman, Exhibit D.

Counsel for Bio–Rad instructed Heines not to answer questions "to the extent they elicited opinions which were formulated in consultations with Bio–Rad's trial counsel during preparation for trial."[3] Plaintiff's Opp., at 1–2.

---

**3.** When Stier asked if Heines agreed with Stier's specific description of the process outlined in the Biewenga article, Wise interrupted:

> I'm going to object at this point. Are you asking for his opinion today as to what this reference describes?

> Stier: I am asking for him to draw a comparison. And your objection is noted.

> Wise: Well, if you're asking for his opinion based on his reading of the reference today as to what it does or does not describe, then I'm going to instruct him not to answer.

Pharmacia contends Heines misrepresented to the Patent Office data contained in the Biewenga article to the Patent Office. Pharmacia claims it must elicit admissions and testimony from Heines regarding his 1987 amendment distinguishing the Biewenga article as not constituting prior art. Pharmacia has no source other than Heines from which to obtain this information and, without a meaningful cross-examination of Heines, Pharmacia's prior art defense to the patent infringement claim cannot succeed.

Bio–Rad concedes that, as a percipient witness to the preparation of the '366 patent application, Heines' characterization of the Biewenga article and the truthfulness of his statements to the Patent Office *at the time of the '366 patent application* are discoverable. Plaintiff's Opp., at 3–4. This concession is of limited value to Pharmacia because today Heines has a minimal to no recollection of his understanding of the Biewenga article nor the accuracy of the representations he made to the Patent Office regarding the article at the time he was prosecuting the '366 patent.[4]

> Mr. Heines is working with Townsend and Townsend as an expert consultant in this area, and his current opinion as to the meaning of that reference is not factually relevant to this case, but it is relevant and part of our work product.
> So I would like to ask that you restrict your questions to the file wrapper and his statements made there, whatever understanding he had at the time of the reference and what his recollection of his understanding at the time may have been with respect to that reference.
> Stier: Let me state first for the record that I don't think that you can avoid discovery of this witness, who is a fact witness, by claiming that he is an expert consultant in this case. I'm not asking for opinions that he has developed as an expert consultant.
> Wise: Well, this is simply my objection. I will instruct him not to answer questions that request his opinion or his view as to the meaning or content of that reference today with respect to any prior art references, as a matter of fact.
> Dep. of Heines, at 100–101; attached Decl. of Eiseman, Exhibit B.

**4.** In regard to references to IgG binding contained in the Biewenga article, Heines testified,
> As I look at it now, there is a reference to IgG binding protein A. I don't know what I was thinking at the time though.

However, Bio–Rad argues that Heines' *present opinions* of the Biewenga article are precluded from discovery by the work product doctrine and the Federal Rules of Civil Procedure governing expert witnesses. Plaintiff's Opp., at 2.

### 1. Work Product Doctrine

The work product doctrine was established by the Supreme Court in the seminal decision of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and now codified in the Federal Rules of Civil Procedure. Fed.R.Civ.P. 26(b)(3), the work product rule, provides that:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under [the general scope of discovery] of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equiva-

> Stier: And the reference to IgG binding protein A included information about the salt concentration under which that binding was taking place; correct?
> Heines: You're stating this in the past tense. The information in this [Biewenga] article, what it discloses I can only tell you from looking at it now.
> Wise: That's not what you're being asked to do, and I will instruct you not to answer.
> Heines: I do not remember what I was thinking back then, or how I read the article back then.
> Stier: Well, when you made your representations to the patent office on July 10, 1987, you indicated, at the last paragraph on page 2—
> Heines: Can you give me the production number, please?
> Stier: 2781.
> Heines: Got it.
> Stier: —that there was data showing the use of IgG with increased salt concentrations. And that data was shown in Figure 2 at page 196 of the [Biewenga] article; right? That's the way you read it; right?
> Heines: I can only assume that this is a truthful representation of what I was thinking at the time.
> Dep. of Heines, at 103–104; Decl. of Eiseman, Exhibit D.

lent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The *Hickman* court recognized that it was "essential that a lawyer work with a certain degree of privacy, free from the unnecessary intrusion of opposing parties and their counsel." *Hickman*, 329 U.S. at 510, 67 S.Ct. at 393. Were work product discoverable by opposing counsel on mere demand, an attorney's thoughts would not be his or her own. "Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial." *Id.* at 511, 67 S.Ct. at 393. "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975).

The work product doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system." *Id.* at 238, 95 S.Ct. at 2170. One of the realities of litigation is that the work product doctrine furnishes no shield against discovery by interrogatories or by deposition of facts that the adverse party's lawyer has learned. 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2023, at 194 (1970).

With respect to documents within the scope of Rule 26(b)(3) containing facts, such as witness statements, the party seeking discovery "must show a substantial need for the materials in preparing his case, and that he is unable without undue hardship to otherwise obtain substantially equivalent materials." 4 J. Moore, *Federal Practice* § 26.64[3.–1], at 26–362 (2d ed. 1987). In *Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981), the Supreme Court noted that some courts had concluded that no showing of necessity could overcome the protection given to an attorney's mental impressions, conclusions, opinions and legal theories, known as opinion work product. The Court declined to rule whether opinion work product was absolutely protected.

The Court did hold that a party seeking opinion work product material must make a showing beyond the substantial need/undue hardship standard articulated in the first part of Fed.R.Civ.P. 26(b)(3). *Id.* Likewise, the Ninth Circuit Court of Appeals has not addressed the questions of whether opinion work product is discoverable and, if so, upon what showing.

Other circuit courts of appeals are divided on the question of whether opinion work product is discoverable. In the District of Columbia Circuit and the Third and Eighth Circuit Courts of Appeals such material is discoverable. *In re Sealed Case*, 676 F.2d 793, 809–10 (D.C.Cir.1982) ("However, to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification."); *In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3rd Cir.1979) (Opinion work product is not absolutely protected but rather "is only entitled to qualified protection."); *In re Murphy*, 560 F.2d 326, 336 (8th Cir.1977) ("Absent a compelling showing, the attorney's opinion work product should remain immune from discovery."); *see* J. Moore, *supra*, § 26.64[3.–2], at 26–385.

The leading case holding that opinion work product material is absolutely protected is *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730 (4th Cir.1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975). However, as noted by Judge Gordon of the Fourth Circuit, "recent decisions which recognize that the protection of opinion work product by Rule 26(b)(3) is not in all cases absolute erode the precedential value of *Duplan*." *Charlotte Motor Speedway v. International Insurance Co.*, 125 F.R.D. 127, 129 (M.D.N.C.1989) (construing *Upjohn*, 449 U.S. 383, 101 S.Ct. 677, 66

L.Ed.2d 584; *In re Martin Marietta Corp.,* 856 F.2d 619, 626 (4th Cir.1988)).

■ This court declines to hold opinion work product is absolutely immune from disclosure and instead finds the better rule to be that "an attorney's opinion work product is discoverable where such information is directly at issue and the need for production is compelling." *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 933 (N.D.Cal.1976). *See also Reavis v. Metropolitan Property and Life Insurance Co.,* 117 F.R.D. 160, 164 (S.D.Cal. 1987); *Kockums Industries v. Salem Equipment,* 561 F.Supp. 168, 171–73 (D.Or. 1983).

In *Handgards,* one manufacturer of plastic gloves brought an antitrust action against another such manufacturer, claiming the defendant initiated a series of patent infringement suits with the knowledge the patents sued upon were invalid as part of a scheme to monopolize the market. Defendant intended to call as witnesses three attorneys primarily responsible for prosecuting the prior patent infringement suits to testify as to legal advice rendered to defendant in connection with the prosecution of the prior actions. Plaintiff noticed depositions of the attorneys and subpoenaed documents relating to the basis of their opinions as to the merits of the prior patent litigation. Defendants resisted such discovery on the basis of the attorney-client privilege and work product rule. *Handgards,* 413 F.Supp. at 928.

Judge Orrick held that Johnson & Johnson voluntarily waived the attorney-client privilege by deciding to call its own patent attorneys as witnesses to testify as to their legal advice regarding the prosecution of patents at issue. Thus, the substance of otherwise privileged attorney-client communications was subject to discovery.

Furthermore, with respect to the protection provided by the work product rule, Judge Orrick found that,

> The principal issue in the case at bar is the good faith of the defendants in instituting and maintaining the prior patent litigation against plaintiff. Plaintiff's success in the instant action depends upon a showing that defendants pursued the prior suits knowing they would be unsuccessful on the merits. Since the lawyers who managed and supervised the former litigation for the defendants are being called as witnesses to express their opinions as to the merits of the prior suits and the validity of the underlying patents, plaintiff has a particularized and compelling need for the production of the relevant work product of these attorneys. Without discovery of the work product, plaintiff will be unable to ascertain the basis and facts upon which the opinions of these witnesses are based. This will undoubtedly impair plaintiff's ability for effective cross-examination on a crucial issue.

*Id.* at 931.

■ Bio–Rad maintains that Heines' present opinions concerning Biewenga's alleged prior art are inextricably intertwined with the mental impressions, conclusions, opinions and legal theories and, thus, are protected opinion work product.[5]

Pharmacia is not seeking the opinion work product of Bio–Rad's trial counsel, but only additional deposition testimony from Heines. Defendant's Reply Brief in Support of Motion, at 1. Any such opinion work product would be disclosed to Pharmacia only to the extent that Heines' current opinions are contaminated by his consultations with trial counsel.

It is important to this court's analysis that Bio–Rad voluntarily engaged Heines,

---

**5.** When asked by the court at oral argument, if Heines today has a different opinion of his characterization of the Biewenga article, whether it would be interesting to see what the basis for this new opinion was as opposed to his earlier opinion that the article did not constitute prior art, Cook replied,

> I don't think you can carve it out. I don't think you can say well we'll find out if he's got a different opinion today than before. And when he gives that answer you find that, if he's got a different opinion, it's because of additional facts that were brought to his attention by trial counsel, additional studies in preparation for trial that reveals the essence of trial preparation.

Statement of Cook at oral argument.

the prosecuting patent attorney, as expert consultant to trial counsel in the pretrial preparation. Adopting this strategy, Bio–Rad exposed Heines to the opinions of trial counsel to such an extent that his present opinions are no longer distinguishable from trial counsel's. Certainly Pharmacia's need to learn Heines' opinions, past and present, comes as no surprise to Bio–Rad. Nonetheless, Bio–Rad's trial counsel elected to make Heines privy to their strategy and opinions. Thus, the situation has the same element of voluntariness which existed in *Handgards*.

This court finds that Pharmacia has made a showing of exceptional need for further deposition testimony from Heines. A fundamental issue in this case concerns the statement Heines made in his amendment to the '366 patent that the data contained in the Biewenga article was impossible to duplicate and, therefore, the article did not constitute prior art.[6] Pharmacia's success in this action depends in large part upon showing that the Biewenga article constituted prior art and Heines either intentionally or mistakenly misrepresented its findings to the Patent Office. Pharmacia can only explore Heines' opinions then and now through examination of Heines. Evidence that Heines has changed his opinion of the propriety of his characterization of the article could seriously compromise Bio–Rad's claims as to the validity of the '366 patent.

The court concludes that in these circumstances Bio–Rad has voluntarily waived work product protection insofar as Heines' present opinions and the basis therefore reflect trial counsel's. To hold otherwise would enable Heines to testify at trial as to the validity of the patent but effectively preclude Pharmacia from meaningful cross-examination, particularly in light of Heines' failure of any present recollection concerning his opinions and the basis thereof at the time of the patent application. *Compare Nobles*, 422 U.S. at 239–40, 95 S.Ct. at 2170–71 (A party "can no more advance the work-product doctrine to sustain a unilater-

al testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination").

2. Rules of Discovery Governing Expert Witnesses

Fed.R.Civ.P. 26(b)(4) provides:

Discovery of facts known and opinions held by experts, otherwise discoverable ... and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, ...

(B) A party may discover facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, ... upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Bio–Rad has employed Heines as an expert consultant for its trial counsel. Bio–Rad acknowledges that Fed.R.Civ.P. 26(b)(4) does not limit the discovery of an individual who was an actor with respect to transactions that are part of the subject matter of the lawsuit and who is later designated an expert. *See* Advisory Committee's Note, 48 F.R.D. 487, 503 (1970); Plaintiff's Opp., at 13. Heines is simply a

---

**6.** Bio–Rad acknowledges the importance of the Biewenga article to Pharmacia's defense: "[i]n its answer, Pharmacia raised as its principal defense and counterclaim that the patent is invalid in view of a prior art publication by Biewenga." Plaintiff's Opp., at 2.

precipient witness with respect to his prosecution of the '366 patent application.

However, since Heines has now been retained as an expert for this litigation, Bio–Rad asserts Heines' opinions and knowledge developed in the course of providing expert assistance to its trial counsel are precluded from discovery under Fed.R. Civ.P. 26(b)(4):

> Pharmacia's counsel was permitted, but chose not to pursue, discovery of the full scope of Mr. Heines' knowledge and opinions acquired as an 'actor' and percipient witness to the facts at issue in this case. Now, under the guise of a motion ostensibly directed to that very testimony, Pharmacia seeks to build its own case by pirating the legal analyses of its opponent. Pharmacia's motion to compel further deposition testimony from Mr. Heines should be denied.

Plaintiff's Opp., at 14.

This is a gross mischaracterization of Pharmacia's deposition questions. Pharmacia sought to discover the knowledge Heines acquired as a percipient witness but was effectively prevented by Heines' lack of memory. The court agrees with Pharmacia that "[t]here was only one reason to designate [Heines] on the day of his deposition as an undisclosed expert: to prevent Pharmacia from obtaining his testimony." Defendant's Memo., at 10.

Bio–Rad has not stated whether it intends to call Heines as an expert witness at trial. In the event that Heines is not called to testify at trial, Bio–Rad asserts Heines' "opinions derived from consultation with Bio–Rad trial counsel would not be discoverable under *any* circumstances." Plaintiff's Opp., at 11 n. 11 (emphasis in original). This clearly misstates the directive of Fed.R.Civ.P. 26(b)(4)(B) that a party may discover the opinion of an expert retained in anticipation of trial and who is not expected to be called as a witness at trial "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

■ The court has already found the Pharmacia has made a showing of exceptional need justifying disclosure of the opinion work product of Bio–Rad's trial counsel to the extent that Heines' current opinions and knowledge of the '366 patent application reflect the opinion work product of trial counsel. Likewise, the court finds that, even if Heines is not be called to testify at trial, Pharmacia has made the showing of exceptional circumstances as required under Fed.R.Civ.P. 26(b)(4)(B).

■ In the event Bio–Rad chooses to call Heines to testify at trial, Bio–Rad relies on *Nelco Corp. v. Slater Elec. Inc.*, 80 F.R.D. 411 (E.D.N.Y.1978) for the proposition that, if the deponent was an actor at the time of the patent application, but became an expert witness during the course of litigation, the deponent can only be deposed as to his knowledge of the facts and opinions held at the time of the application. Any of deponent's legal opinions formed in preparation for trial would be protected.

The court disagrees with Bio–Rad's interpretation of *Nelco.* In *Nelco*, during the course of the deposition of plaintiff's employee, one of the inventors of the devices protected by the patents at issue, the deponent was asked to interpret the claims relating to the patents. The deponent refused to respond on the grounds that he was expected to be called at trial as an expert witness for plaintiff and defendants had not moved the court to direct his discovery under Fed.R.Civ.P. 26(b)(4)(A). Subsequently, the defendants sought a order compelling deponent to respond to questions directed at his interpretation of the patent claims pursuant to Fed.R.Civ.P. 37(a). *Id.* at 413.

Citing the Advisory Committee's Note to Rule 26(b)(4)(A), the *Nelco* court held that with respect to the deponent's background and experience gained in developing the patents, he was to be treated as an ordinary witness. *Id.* at 415. The court pointed out that otherwise "future parties would be encouraged to employ as expert witnesses the participants in the very events which gave rise to their lawsuits." *Id.* at 416.

The court ordered the deposition to re-commence. However, the court also held that the deponent was "not required to answer as to facts known or opinions developed or acquired in anticipation of or in preparation for trial." *Id.* Plaintiff had argued that "since the deponent [was] an expert who it expect[ed] to call at trial, his deposition [was] obtainable only under the procedures set out in Rule 26(b)(4)(A)." *Id.* at 413. The court accepted plaintiff's argument: "At the deposition, ... a prospective [expert] witness [is not] required to respond to questions addressed to 'facts known or opinions held by experts (which are) acquired or developed in anticipation of litigation or for trial', Fed.R.Civ.P. 26(b)(4)(A), unless directed to do so under Rule 26(b)(4)(A)." *Id.* at 414.

While it is not expressly stated, it is apparent that the *Nelco* court understood Fed.R.Civ.P. 26(b)(4)(A)(i) to limit the means of discovery of expert witnesses to the propounding of interrogatories unless the opposing party moved for an order of the court under Fed.R.Civ.P. 26(b)(4)(A)(ii) to compel discovery by other means. The defendants had not done this. Instead, they relied on Fed.R.Civ.P. 37(a). Consequently, defendants could only ask the deponent questions concerning subjects upon which he had a basis of knowledge gained prior to his preparation as plaintiff's expert trial witness.

The requirement imposed by Fed.R.Civ.P. 26(b)(4)(A) that experts may not be deposed concerning facts and opinions they formed as experts retained in anticipation of trial unless ordered to do so, the basis of *Nelco's* holding, is wholly inapplicable to the Northern District of California District Court. The *Guidelines for Discovery Motion Practice and Trial* state that "Rule 26(b)(4) should be consulted [in regard to expert discovery]. However, experts who are prospective witnesses are *normally produced for deposition by the opposing party as a matter of course.*" *Id.* at 4 (emphasis added). This is a matter of routine practice in this district court.

In conclusion, fundamental fairness requires that Bio–Rad bear the risk of involv-ing Heines in the pretrial preparation when he was also the percipient witness to the prosecution of the patent. Pharmacia should have the opportunity to depose Heines on the prosecution of the '366 patent, including his past and present opinions regarding the effect of the Biewenga article as prior art.

For the foregoing reasons,

IT IS HEREBY ORDERED that Bio–Rad's counsel, M. Henry Heines, shall be further deposed and shall respond to Pharmacia's questions regarding the prosecution of the '366 patent, including, but not limited to, his past and present opinions regarding the effect of the Biewenga article as prior art in the application and amendment process of the '366 patent.

### B. Motion to Compel Production of Documents

Pharmacia seeks discovery of four documents related to the prosecution of the '366 patent, listed as follows:

AC–3  Letter to Albert Hillman of Townsend and Townsend from Hector Juarez–Salinas, Assistant Product Manager of Bio–Rad's Life Sciences Group, dated May 30, 1984.

AC–5  Handwritten draft of patent application and commentary prepared by James Rickey ("Rickey") of Townsend and Townsend for Heines, dated June 13, 1984.

AC–14  Handwritten note of Heines, unspecified date.

AC–18  Memorandum of Heines following receipt of report from Robert Matson ("Matson"), group leader at Bio–Rad, relating to experimental tests performed by him, dated March 23, 1987.

Bio–Rad has refused to produce these documents solely on the basis of the attorney-client privilege and "does not claim work product immunity with respect to the documents in question." Plaintiff's Opp., at 15, n. 13.

Pharmacia argues that documents relating to the preparation and filing of a patent application are not within the protection of the attorney-client privilege if they contain

technical information provided for communication to third parties in the patent application process. *Hercules Inc. v. Exxon Corp.*, 434 F.Supp. 136, 147–48 (D.Del. 1977); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1168 (D.S.C.1974); *Jack Winter, Inc. v. Koratron, Inc.*, 50 F.R.D. 225, 228 (N.D.Cal.1970).

Bio–Rad responds that the attorney-client privilege protects the requested documents, relying on a line of authority protecting communications which are a combination of technical information and privileged material sent between attorney and client. *Hewlett–Packard v. Bausch & Lomb*, 116 F.R.D. 533, 542 (N.D.Cal.1987); *Status Time Corp. v. Sharp Electronics Corp.*, 95 F.R.D. 27 (S.D.N.Y.1982).

In order to determine if the requested documents are protected by the attorney-client privilege, the court conducted an *in camera* review of the four documents.

Upon review of their content, the purposes of the communications, and the context in which they were written, this Court finds that attorney-client privilege does not attach to the four documents.

"The attorney-client privilege bestows upon a client a privilege to refuse to disclose and to prevent others from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." *Handgards*, 413 F.Supp. at 929. While the privilege "primarily applies to *facts* divulged by client to attorney, ... its scope also includes opinions from attorney to client based on those facts." *Brinton v. Department of State*, 636 F.2d 600, 605 (D.C.Cir.1980) (emphasis in original). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 383, 101 S.Ct. at 677.

■ As explained by Judge Wyzanski, the basic elements which are necessary to establish a claim of attorney-client privilege are as follows:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass. 1950). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 24 (9th Cir. 1981).

■ In the field of patent litigation, it is the general rule that the attorney-client privilege does not prohibit disclosure of communications to the attorney from the client largely consisting of factual information to be used for disclosure in the patent application process because the attorney is considered "merely serving as a conduit for factual information" and "not acting primarily as a lawyer." *Hewlett–Packard*, 116 F.R.D. at 543. This rule, known as the "conduit theory" of patent prosecution, extends "to any materials submitted by a client to his attorney with the intent that they be passed on to a third party or to a file. With regard to such documents, the necessary element of confidentiality is lacking." *Duplan Corp.*, 397 F.Supp. at 1168.

However, if the communication contains considerable factual information but is primarily concerned with giving legal advice to the client, it may be privileged. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533 (N.D.Cal.1987).

The document at issue in *Hewlett–Packard* was written when the client, speaking through in-house counsel, asked its outside counsel "to prepare *and submit* in confidence, a proposed 'Reply Under C.F.R.

SECTION 1.111.' " *Id.* at 542 (emphasis added). The reply draft submitted by outside counsel, while containing an amendment to the patent office, consisted mainly of arguments presented in private to the examiner during the *ex parte* reexamination interview and of new or newly phrased arguments developed after the interview. *Id.*

Magistrate Brazil considered it important that the reply draft was written after the examiner had tentatively decided to reject key claims in the client's patent. The client was in "an adversary relation to the examiner" and clearly trying to *"persuade* the examiner to change his mind." *Id.* at 543 (emphasis in original). While it was "arguable that some of the material in [the] draft 'Reply' consist[ed] only of descriptions of facts," the document was "quintessentially [the] professional advice [of counsel] to his client about how best to present its case, given the legal norm that the examiner would use to decide the outcome." *Id.*

Magistrate Brazil did not seek to overturn the conduit theory. Rather, he endorsed the view that in certain circumstances the attorney-client privilege can be available to documents generated in connection with *ex parte* proceedings before the Patent Office. *Id.*

█ In the case at bar, document AC–3, the letter dated May 30, 1984 from Salinas to Hillman, is a confidential communication from the client to its attorney, but not a privileged document. The letter solely transmits specific technical information about tests done with the process now embodied in the '366 patent. The letter clearly states its purpose is to help clarify some of the problems related to the filing of the '366 patent application. As such its principal purpose was not to secure legal advice, but for the business service of the attorney passing along the information to the Patent Office.

█ Document AC–5 is a preliminary draft of the '366 patent application. It was written by Rickey, a junior attorney, possibly summer clerk at the time, with Townsend & Townsend at Heines' request and includes questions for discussion with Heines "and/or the client." Declaration of Heines in Opposition to Motion to Compel ("Decl. of Heines"), at 3.[7]

This document is not an attorney-client communication. It was an in-house draft patent application prepared by a junior associate at the request of a senior attorney at Townsend and Townsend. To the extent it reflects information received from the client, that information consists of technical information not protected under the conduit theory. In regard specifically to the questions listed by Rickey on the page Bates Stamp No. 002703, the declaration of Heines does not state that these questions were ever *actually* posed to the client. Although these questions reveal Rickey's mental impressions, that is not relevant to this court's inquiry because Bio–Rad is not asserting the work-product doctrine. The questions also reveal factual information communicated from Bio–Rad to Townsend and Townsend, but this information is non-privileged technical data meant primarily for aid in drafting the patent application.

█ Document AC–14 appears to be a directive from Heines to his secretary concerning a mailing of some unidentified correspondence. This memo does not contain any legal advice or otherwise privileged communication.

█ Document AC–18 is a memorandum written by Heines and sent to the client's file on March 23, 1987. It incorporates his own mental observations regarding technical data received from Bio–Rad, specifically Matson, about the tests related to the '366 patent application and how the data could be used to persuade the examiner to approve the application.

Heines declared that,

> Heines treated the attorney's work as dispositive. The document is relevant because it was written partially in response to the Salinas letter and constitutes preliminary work on the '366 patent application.

---

**7.** Heines states that he treated Rickey's "work on this draft more as training exercise than as a contribution to the patent application as ultimately submitted to the [Patent Office]." Decl. of Heines, at 3. This court does not view how

This memorandum [document AC–18] was prepared by me to organize and summarize the report by Robert Matson, group leader at Bio–Rad, relating to certain experimental tests performed by him. I understood Mr. Matson's memorandum was communicated to me in confidence, for use in performing patent application legal services for Bio–Rad. To the best of my present recollection, the specific legal services to be performed, as a result of Bio–Rad's communication of Mr. Mattson's [sic] observations to Townsend and Townsend, was to evaluate the effectiveness of proposed patent claim limits to be certain that they provided the coverage necessary to protect the invention from infringement, as well as to see what bearing if any these observations had on arguments which I was submitting to the [Patent Office] during the prosecution of the application.

Decl. of Heines, at 4–5.

Given Heines' lack of memory at his recent deposition of his past understanding of the Biewenga article, this court is hesitant to rely on Heines present recollection of the legal services he performed in March 1987 as a result of Matson's memorandum. It appears the test results provided by Matson to Heines were later used by Heines to amend claim 1 of the '366 patent application. *See* Amendment, at 1, attached to Decl. of Eiseman, Exhibit B. The data may also have been used to criticize the significance as prior art of the Biewenga article. *See* Amendment, at 3, attached to Decl. of Eiseman, Exhibit B.

While document AC–18 reviews data provided in Matson's report, the question of whether Matson's report is protected by the attorney-client privilege is not before this court. To the extent Heines' memorandum reflects confidential information received from Bio–Rad, this court finds the information is nonprivileged technical data meant primarily for aid in completing the '366 patent application.

Nor does this court find Heines' memorandum itself to be protected by the attorney-client privilege. "[T]he attorney-client privilege protects only those papers prepared by the client for the purpose of confidential communication to the attorney or by the attorney to record confidential communications." *Colton v. United States*, 306 F.2d 633, 639 (2nd Cir.1962). The memorandum reviews non-privileged data received from the client and then details Heines' thoughts on the revelance of this information to the '366 patent application. Heines' thoughts do not record confidential and privileged communications with the client.

Nor can one conclude the memorandum provided legal advice to Bio–Rad. This court refuses to entertain the legal fiction that documents drafted by an attorney for his or her use, placed in the client's file, and never transmitted to the client are "constructively" communicated to the client.

IT IS HEREBY ORDERED that Bio–Rad fully disclose documents labeled AC–3, AC–5, AC–14 and AC–18 to Pharmacia. Disclosure to Pharmacia is to be made no later than March 9, 1990.

### C. Pharmacia's Request for Sanctions

Pharmacia requests sanctions to cover the expenses incurred in bringing this motion. In light of the complexity of the issues and substantial justification for the position urged by each party, the court deems it fair for the parties to bear their own costs. Defendant's request for sanctions is DENIED.