**The LAITRAM CORPORATION, A Louisiana Corporation**

v.

**HEWLETT–PACKARD COMPANY, INC. a California Corporation.**

Civ. A. No. 91–4023.

United States District Court, E.D. Louisiana.

March 4, 1993.

Steven W. Usdin, Phillip A. Wittmann, Dane S. Ciolino, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, LA, Barry Louis LaCour, Laitram Corp., Harahan, LA, Timothy J. Malloy, Lawrence M. Jarvis, Robert B. Polit, McAndrews, Held & Malloy, Chicago, IL, for Laitram Corp.

Stewart Earl Niles, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegrer, New Orleans, LA, S. Leslie Misrock, Jonathan A. Marshall, Brian D. Coggio, Stephen J. Harbulak, Edmond R. Bannon, Pennie & Edmonds, New York City, George C. Summerfield, Marcia H. Sundeen, Pennie & Edmonds, Washington, DC, Alexander Hall Plache, CertainTeed Corp., Valley Forge, PA, for Hewlett–Packard Co., Inc.

### ORDER AND REASONS

FELDMAN, District Judge.

Laitram appeals the Magistrate Judge's ruling denying the claim of privilege as to certain documents relating to the patents at issue. Laitram also appeals the Magistrate Judge's order compelling the attorney, Mr. Brown, to give deposition testimony.

This case involves Laitram's claims of patent infringement in the field of calculator technology. It has been a frequent subject of this Court's attention and the facts of the case are well documented in prior written opinions.

### I.

The scope of review by this Court of a Magistrate Judge's ruling in a nondispositive matter is certainly a narrow one. Unless that ruling is clearly erroneous or contrary to law, it must be upheld. *See* Fed.R.Civ.P. 72(a). In this instance, this Court is asked to review the Magistrate Judge's ruling that certain of plaintiff's documents relating to the prosecution of the patents in this case are not covered by the attorney-client privilege and must be produced. It is the plaintiff's contention that this is contrary to case law holding that to allow discovery of these matters would seriously damage the relationship between patent attorney and client. The defendant, on the other hand, counters that the weight of authority is in favor of discoverability of these types of documents. A resolution of this dispute requires an examination of the attorney-client privilege as it has developed in patent law, in particular the dialogue between the *Knogo* case and disciples of *Jack Winter*. *See Knogo Corp. v. United States*, 213 U.S.P.Q. (BNA) 936, 940–41 (Ct.Cl.1980); *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44, 46, 172 U.S.P.Q. (BNA) 201, (N.D.Cal.1971); *Jack Winter, Inc. v. Koratron Co.*, 50 F.R.D. 225, 166 U.S.P.Q. (BNA) 295 (N.D.Cal.1970).[1]

### II.

There has long been a division among courts on the question of the scope of the attorney-client privilege in the patent acquisition process. One line of thinking, represented by the *Jack Winter* cases, maintains that a somewhat cramped attorney-client privilege is available, which does not cover factual information communicated so that the attorney could then disclose it in a patent or trademark application as the inventor's conduit. As the court wrote in the first *Winter* case:

1. The parties spend a great deal of time trying to convince this Court that their favored case, be it *Knogo* or *Winter* and son of *Winter*, is binding precedent on this Court. This Court does not believe that either line of cases is necessarily doctrinally incompatible.

Much of the information passing from client to attorney for purposes of preparation of patent application is technical material relating to descriptions of the products and/or processes sought to be patented, explanations of prior art, public use and sale, and samples of the product. [I]n connection with the examination there is no room for game playing or withholding. As we view it, the attorney exercises no discretion as to what portion of this information must be relayed to the Patent Office. He must turn *all* such factual information over in full to the Patent Office ... and hence with respect to such material he acts as a conduit between his client and the Patent Office. As to all such matters it is concluded that a basic element required for the assertion of an attorney-client privilege is absent—that is, a communication not for relay but for the attorney's ears alone. (Emphasis in text).

*Jack Winter, Inc. v. Koratron Co.*, 50 F.R.D. at 228. In the second *Winter* opinion, the court expanded on the types of documents that it felt were not privileged. In particular, the court found "technical information communicated to the attorney but not calling for a legal opinion or interpretation and meant primarily for aid in completing patent applications" was not privileged. *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. at 47.[2]

The *Winter* view of the scope of the attorney-client relationship in patent applications turns on the ungenerous idea of the patent attorney as a mere conduit of factual and technical information. Since the client knows that the attorney must disclose this information to the Patent Office, *Winter* assumes, the client presumably has no expectation that the communication will remain confidential. As one court has written, the "conduit theory rests on the rule that a document that is not privileged in the client's hands does not become so merely because it is given to an attorney." *See Ashland Oil Inc. v. Delta Oil Products Corporation*, 209 U.S.P.Q. (BNA) 151, 152 (E.D.Wis.1979). The court in *Ashland Oil* found the "parameters of the technical information exception were stated in the district court's second opinion in the Jack Winter case: 'Technical information ... not calling for a legal opinion or interpretation and meant primarily for aid in completing patent applications.'" *Id.* at 153. The scope of the resulting discovery under the *Winter* approach should not be underestimated. Under this model "any questions relating to the original patent application and the thoughts, discussions, advice, etc. would be discoverable as to that limited subject unless it was for a legal opinion aside from the application." *See McNeil–PPC, Inc. v. The Proctor and Gamble Co., et al*, 136 F.R.D. 666, 668 (D.Colo.1991). Technical information concerned with primarily giving legal guidance remains privileged under *Winter. Id.* at 46. One must not lose sight of that.

The *Winter* theory has its share of support. *See Bulk Lift International, Inc. v. Flexicon & Systems, Inc.*, 122 F.R.D. 482, 492–93 (W.D.La.1988), *aff'd* 122 F.R.D. 493 (W.D.La.1988) (certain documents constituting technical information not calling for a legal opinion or interpretation were discoverable); *Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 154–55 (W.D.N.Y.1982) (held that nonprivileged documents included, among others, patent disclosures, draft patent applications, technical nonlegal material related to the final patent, or studies of prior art); *Duplan Corp. v. Deering–Milliken, Inc.*, 397 F.Supp. 1146, 1168–69 (D.S.C.1974). The *Winter* cases and their followers, however, have also provoked a strong resistance from those who believe, as the court in *Knogo* did, that *Winter* misunderstands the more intricate nature of the patent attorney-client relationship.

---

**2.** Other documents considered not privileged also include:
(1) client authorizations to file applications and take other steps necessary to obtain registration ... (6) business advice, such as that related to product marketing; (7) communications whose confidentiality has been waived; (8) documents written or obtained from third parties, even though attached to communications seeking or giving legal advice.
*See Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. at 47.

## III.

The Court of Claims in *Knogo Corp. v. United States,* considered the relationship between patent attorney and client to be a much more complicated one than that envisioned by the court in the *Winter* cases. That court explained:

> The reality of the cooperative effort put forth by the inventor and the attorney is far different from the Jack Winter portrayal. The technical discussions between attorney and client enable the attorney to extract from this information one or more patentable inventions. The attorney then drafts one or more patent applications in accordance with the requirements of the federal statutes and regulations. The attorney 'has no duty to transmit information which is not material to the examination of the application.' 37 C.F.R. Sec. 1.56(b) (1979). The application for patent is reviewed by the client, and then filed in the Patent Office by the attorney on behalf of the client. The signed, sworn and filed application might be a communication for relay and not for the attorney's ears alone, but the same cannot be said about the technical communications which preceded the signed, sworn and filed patent application.
>
> The fact that much of the technical information in one form or another finds its way into the patent application, to be made public when the patent issues, should not preclude the assertion of the privilege over the communication in which that information was disclosed to the attorney.

*Knogo,* 213 U.S.P.Q. at 940–41. The *Knogo* approach focuses, then, on a dialogue occurring between the client and the attorney as to the scope of the technical parameters of the anticipated patent. The patent lawyer's role under this approach appears to center on encouraging the inventor to think critically about what are the logical technical limits of the claimed invention. This information is then strained through the lawyer's legal knowledge and experience in patent applications. As one court has succinctly explained this process,

We view that process as fundamentally dialectical and, in very important respects, legal. In the first and most relevant instance, the dialectic is a private one between an inventor and his or her patent lawyer. The inventor usually brings to the dialogue little reliable legal knowledge but much technical information about the product or process and some information about prior art. The lawyer brings to the dialogue an understanding of ... the criteria used by the PTO in deciding whether to issue patents and if the legal principles and considerations that come into play when parties seek to enforce a patent against an alleged infringer or to challenge a patent's validity.

In their private dialogue, inventor and lawyer attempt, as a team, to make judgments that are subtle and have real legal dimensions and implications.

*See Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.,* C.A. 144 F.R.D. 372 (N.D.Cal.1992). This dialogue between patent lawyer and inventor involves judgments as to the breadth of the claim, the meaning of prior art, which prior art to cite, and how to explain the claims. These judgments are "not simple, linear, technical undertakings. They are intellectually dense, and the density is both technical and legal." *Id.* at 376. As with the *Jack Winter* cases, the *Knogo* case and the theory of protected dialogue has its loyal following. *See Minnesota Mining and Mfg. Co. v. Ampad Corp.,* 7 U.S.P.Q. 2D (BNA) 1589, 1590–91 (D.Mass.1987); *FMC Corp. v. Old Dominion Brush Company,* 229 U.S.P.Q. (BNA) 150, 151, 1985 WL 5983 (W.D.Mo.1985); *Research Corp. v. Gourmet's Delight Mushroom Co.,* 560 F.Supp. 811, 820 (E.D.Pa.1983).

At one level, then, the issue for this Court is whether the Magistrate Judge has erred in adopting the *Winter* approach to the scope of the attorney-client privilege in analyzing the documents. Yet at another level the question that must be asked, and this is partially suggested by the defendant, is whether these two divergent lines of cases can be harmonized. This Court is of the opinion that to some extent they can and should be. Even

so, this Court believes that the *Knogo* approach is a more accurate one. It understands the transactional give-and-take that occurs between inventor and patent lawyer in the patent acquisition process.

## IV.

The *Winter* test for nonconfidentiality is whether the communication of the technical information calls "for a legal opinion or interpretation [or is] meant primarily for aid in completing patent applications." *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. at 47. The *Knogo* cases focus on the question of whether the communication of the technical information was part of an ongoing dialogue about the scope of the patent and other aspects of the patent application. *See e.g., Advanced Cardiovascular Systems, Inc.*, 144 F.R.D. at 375–76. No matter which test is used, it appears to this Court that the central inquiry is whether the client had a reasonable intention that a communication remain confidential. Was technical information disclosed primarily for legal guidance? While it is possible to reach the same answer to this question using either model, the approach adopted under *Knogo*, and explained in *Advanced Cardiovascular Systems*, appears to be more consistent with the professional realities of the patent attorney-client relationship and less open to error as it seeks to examine documents in light of the relationship between patent attorney and client within the application process, rather than just examining a document in isolation from that process.

This Court has reexamined the documents in question with the *Knogo* test in mind. The following documents are ordered disclosed:

| Document | Reason |
| --- | --- |
| BP–4, P–118 | No legal advice given or evidence of dialogue between attorney and client. |
| BP–16, BP–34, P–92 (disclosure limited to paragraphs 3, 4, 5 & 6) | No legal advice—merely describes prior art found. |
| BP–17, P–5, P–6, P–79 | Intention to disclose. |
| P–40 | No indicia of confidentiality, no evidence that constitutes a communication with an attorney. |
| P–157 | No legal advice given or evidence of dialogue. |
| P–214, 215 | No legal advice given or evidence of dialogue. |
| P–229–234 | No legal advice given. |

The following documents are protected by the attorney-client privilege:

| Document | Reason |
|---|---|
| BP–11, BP–13, BP–35 | Evidence of ongoing dialogue about the scope of the claims. |
| BP–29 | Draft application part of the ongoing dialogue about scope of the claim. |
| BP–30, BP–31, BP–32, BP–40, P–7, P–13 | Privileged dialogue about the scope of the claims. |
| BP–72, BP–112, BP–118 | Privileged dialogue about the claim language. |
| BP–113, BP–132 | Part of the ongoing dialogue about the scope of claims. |
| P–36 | Draft application, part of the ongoing dialogue about the scope of the claims. |
| P–89, P–94, P–114, P–194, P–226 | Privileged dialogue about the scope of the invention. |
| P–218 | Privileged legal advice on licensing agreements. |
| BP–82, BP–83, BP–84, BP–88 | Confidential legal advice related to Hewlett–Packard's alleged infringement. |

To the extent that this Court finds that certain documents are protected by the attorney-client privilege under the *Knogo* analysis, the Magistrate Judge's order is reversed.

## V.

The plaintiff has also appealed from the Magistrate Judge's order compelling Mr. Brown to answer deposition questions. The plaintiff argues that the defendant's questions seek privileged information. Neither side has presented this Court with any specificity about the questions sought to be answered, or for which the privilege is claimed. Moreover, the order which is being appealed was a general order and thus is equally unhelpful in informing the Court as to what specific questions are being appealed.

Therefore, this matter is hereby RE-MANDED to the Magistrate Judge either for written reasons as to the specific questions to Mr. Brown that are covered by the order, or the Magistrate Judge shall act as deposition judge and preside over the conduct of the deposition and rule on objections to questions as and when they arise (perhaps the better approach to avoid further bickering and costly appeals).