**McCOOK METALS L.L.C., an Illinois Limited Liability Company, Plaintiff,**

v.

**ALCOA INC., a Pennsylvania Corporation, Defendant.**

No. 99 C 3856.

United States District Court, N.D. Illinois, Eastern Division.

March 2, 2000.

John C. Cleary, Margaret A. Keane, Kelly M. Gronbeck, Leboeuf, Lamb, Greene & Macrae, L.L.P., Pittsburgh, PA, for defendant.

Dan K. Webb, George C. Lombardi, Don J. Mizerk, Christine J. Siwik, Winston & Strawn, Chicago, IL, for defendant.

Reuben L. Hedlund, Steven J. Thompson, Thomas L. Duston, Hedlund Hanley & John, Chicago, Illinois, for plaintiff.

Steven H. Noll, George C. Summerfield, Jr., Michael R. Hull, Hill & Simpson, Chicago, IL, for plaintiff.

***MEMORANDUM OPINION AND ORDER***

MORTON DENLOW, United States Magistrate Judge.

Plaintiff McCook Metals L.L.C. ("McCook") filed a four count complaint

against Defendant Alcoa, Inc. ("Alcoa") claiming 1) tortious interference with contract, 2) tortious interference with prospective business advantage, 3) violation of Section 2 of the Sherman Antitrust Act, and 4) invalidity of two of Alcoa's patents. McCook now brings a motion to compel non-privileged documents consisting of 2478 pages of letters, memos, notes, forms, files, and e-mails, which Alcoa has refused to produce claiming attorney-client privilege, work product doctrine, or both. Oral arguments were held December 7, December 20, and December 22, 1999 and again on January 13 and February 9, 2000, at which time oral rulings were made concerning a number of documents. The remaining documents were ruled on following an *in camera* inspection by the Court. Accompanying and made part of this opinion is an order identifying each document by number with the Court's ruling on each of the 2478 documents.

Following the last hearing, a controlling decision was made by the Federal Circuit which affected the rulings in this case. In addition, upon further review which found that one foreign document was not that which was purported by counsel, some oral rulings were changed to reflect the nature of the documents. Therefore, to the extent that the written order differs from the oral rulings made in court, the written order will control.

This opinion discusses the principles and reasoning the Court applied in its rulings. For clarity and expediency, the documents have been divided into categories sharing similar characteristics and similar reasons for the ruling thereon. The categories are set forth below along with the Court's ruling

for the category, an explanation for the ruling, and examples by Bates numbers of documents that fit into the category. To contain the length of this opinion, a detailed ruling on each separate document in numerical sequence is prepared in a separate order.

## I. DOMESTIC ATTORNEY CLIENT PRIVILEGE

### A. Conduit Theory: Limited Attorney–Client Privilege For Patent Attorneys

Historically, there have been two schools of thought on the subject of attorney-client privilege in the patent arena. One view has been that the attorney-client privilege is not as encompassing in the patent arena as it is in other areas of law. Prior to 1963, the majority of courts did not apply the attorney-client privilege to patent attorneys because "attorneys and employees of ... patent departments are engaged in ... non-legal work." *Zenith Radio Corp. v. Radio Corp. of America*, 121 F.Supp. 792, 793 (D.Del. 1954). Patent department attorneys were not regarded as house counsel, thus one essential element of the attorney-client privilege was lacking. *Id.* at 794. In addition, the normal activities of a patent lawyer, short of preparing cases for trial, were not seen as legal functions.[1] *Id.*

In 1963, the tide turned when the Supreme Court held that "the preparation and prosecution of patent applications for others constitutes the practice of law." *Sperry v. Florida*, 373 U.S. 379, 383, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963). The Court enumerated several patent attorney activities which it considered the practice of law:

> Such conduct inevitably requires the practitioner to consider and advise his clients as to the patentability of their inventions under the statutory criteria as well as to

1. Attorney employees of patent departments are acting in a legal capacity when in specific matters they are engaged in applying rules of law to facts known only to themselves and other employees of their client-companies, and in preparing cases for and prosecuting appeals in the Court of Customs and Patent Appeals and other like courts of record. They do not "act as lawyers" when not primarily engaged in legal activities; when largely concerned with technical aspects of a business or engineering character, or competitive considerations in their companies' constant race for patent proficiency, or the scope

of public patents, or even the general application of patent law to developments of their companies and competitors; when making initial office preparatory determinations of patentability based on inventor's information, prior art, or legal test for invention and novelty; when drafting or comparing patent specifications and claims; when preparing the application for letters patent or amendments thereto and prosecuting same in the Patent Office; when handling interference proceedings in the Patent Office concerning patent applications.
*Zenith*, 121 F.Supp. at 794.

consider the advisability of relying upon alternative forms of protection which may be available under statute law. It also involves his participation in the drafting of the specification and claims of the patent application which this Court long ago noted "constitute(s) one of the most difficult legal instruments to draw with accuracy." And upon rejection of the application, the practitioner may also assist in the preparation of amendments which frequently requires written argument to establish the patentability of the claimed invention under the applicable rules of law and in light of the prior art.

*Id.*

Although the Supreme Court established that patent practice was the practice of law, several courts were reluctant to confer upon patent attorneys the full scope of the attorney-client privilege. The court in *Jack Winter, Inc. v. Koratron Co. Inc. (Jack Winter I )*, 50 F.R.D. 225, 228–29 (N.D.Ca.1970) held that the attorney-client privilege generally should not protect communications between an inventor and his attorney that consists largely of factual material or technical information that the attorney would use to prosecute the patent. Holding that the deciding factor was the "legal relationship between the applicant and the [patent] commissioner" and the concomitant requirement of full disclosure to the Patent Office, the court reasoned that the attorney "exercises no discretion as to what portion of this information must be relayed to the Patent Office" and that the attorney merely "acts as a conduit between his client and the Patent Office." *Id.* at 228. Thus, because the inventor expected the factual information to be passed along to the Patent and Trademark Office ("PTO") and eventually become part of the public domain if a patent were issued, the lack of expectation of confidentiality doomed any claim of privilege. *Id.*

In a later proceeding, the court, consistent with its prior ruling, took the view that those activities which constituted the practice of the "attorney's art" were privileged. *Jack Winter v. Koratron Co., Inc. (Jack Winter II)*, 54 F.R.D. 44, 47 (N.D.Cal.1971) Thus, "[g]enerally, when factual information was communicated so that the attorney could disclose it in a patent or trademark application, the communication was viewed as non-privileged. On the other hand, documents containing considerable technical factual information but which were nonetheless primarily concerned with giving legal guidance to the client were classified as privileged." *Id.* at 46. Applying this analysis, the *Jack Winter II* court held the following documents to be non-privileged:

(1) Client authorizations to file applications and take other steps necessary to obtain registration; (2) Papers submitted to the Patent Office; (3) Compendiums of filing fees and requirements in the United States of foreign countries for various types of applications; (4) Resumes of applications filed and registrations obtained or rejected (including dates and file or registration numbers); (5) Technical information communicated to the attorney but not calling for a legal opinion or interpretation and meant primarily for aid in completing patent application; (6) Business advice such as that related to product marketing; ... (7) Communications whose confidentiality [the client] has waived; .... and (8)[D]ocuments written by or obtained from third parties, even though attached to communications seeking or giving legal advice.

*Id.* at 47. On the other hand, "[m]atters that could be classed as attorney work product, such as preliminary drafts of legal documents, license agreements and/or assignments" the court classified as privileged. *Id.*

## B. Expansive View: Full Attorney–Client Privilege for Patent Attorneys

In contrast, the *Knogo Corp. v. U.S.*, 213 U.S.P.Q. 936 (1980) line of cases[2] rejects the

---

**2.** The following cases have followed the Knogo reasoning in their application of the attorney-client privilege: *Rohm & Haas Co. v. Brotech Corp.*, 815 F.Supp. 793 (D.Del.1993), 815 F.Supp. 793, 26 U.S.P.Q.2d (BNA) 1800, aff'd, 19 F.3d 41 (Fed.Cir.1994); *Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626 (W.D.N.Y.1993); *Fromson v. Anitec Printing Plates, Inc.*, 152 F.R.D. 2 (D.Mass.1993); *Advanced Cardiovascular Sys. Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372, 25 U.S.P.Q.2d 1354 (N.D.Cal.1992); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198 (E.D.N.Y.1988);

*Jack Winter* theory that the patent attorney is simply a conduit of information between the inventor and the PTO, and holds that nearly all communication between a client and his patent attorney, even technical information, is privileged. The *Knogo* court reasoned that communications between a client and his patent attorney, either expressly or impliedly, are "prepared to provide the attorney with the information necessary to assess the invention's patentability, prepare and file a patent application, ... and prosecute the patent application through the Patent Office." *Id.* at 939. In other words, with the exception of cover letters, nearly all communications, explicitly or implicitly, are a request for legal advice. *Knogo* rejects the conduit theory as an "over-simplification of the role performed by the patent attorney during the patent application process" and instead portrays the relationship as a "cooperative effort" between inventor and attorney, including drafts and rewording of the application, to enable the attorney to secure the strongest legal rights available for his client. *Id.* at 940–941.

*Knogo* also rejects the notion that the inventor has no expectation of confidentiality because of the need for full disclosure to the PTO. The *Knogo* court noted that an "attorney has no duty to transmit information which is not material to the examination of the application.... The signed, sworn, and filed application might be considered a communication for relay and not for the attorney's ears alone, but the same cannot be said about the technical communications which preceded the signed, sworn, and filed patent application.... The fact that much of the technical information in one form or another finds its way into the patent application, to be made public when the patent issues, should not preclude the assertion of the privilege over the communication in which that information was disclosed to the attorney." *Id.* at 941. Furthermore, there is "no inference of an intent to disclose anything to the Patent Office when the purpose of the com-

munication by the client to the attorney is merely to elicit a legal opinion concerning the patentability of an invention." *Id.*

In *Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372, 378 (N.D.Cal.1992), the Northern District of California reversed its previous views as expressed in *Jack Winter I* and *II,* and adopted the *Knogo* line of reasoning, holding that "communications from inventor to patent lawyer, even those that are entirely technical, remain presumptively protected by the attorney-client privilege." The court stated that the presumption may be overcome "only on a very compelling showing, e.g., that despite the presumption of confidentiality, the inventor in fact expected specific communications he or she made to patent counsel to be disclosed, without editing, to the PTO." *Id.*

This Court finds the *Knogo* line of cases more persuasive and well-reasoned. This Court also finds that *Knogo* more accurately illustrates the activities of a patent attorney and the patent application process.

## C. The Federal Circuit

In a decision that was decided following the last oral argument, the Federal Circuit has explicitly accepted *Knogo* and its progeny. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (2000). In Spalding, the Federal Circuit held that an invention record provided by an employee inventor to the company's legal patent department is protected by the attorney-client privilege. *Id.* at 804–05. The invention records referred to are standard forms generally used by corporations as a means to inform it's legal department that an invention has been invented, and to initiate patent action. *Id.* at 802 n. 2. They include such information as the names of inventors, a description and scope of the invention, closest prior art, the first date of conception and disclosure to others, dates of publication, and technical information and drawings. *Id.*

*Minnesota Mining & Mfg. Co. v. Ampad Corp.*, 7 U.S.P.Q.2d (BNA) 1589 (D.Mass.1987); *FMC Corp. v. Old Dominion Brush Co.*, 229 U.S.P.Q. (BNA) 150 (W.D.Mo.1985). For a comparison of the different approaches taken by the Jack Winter and Knogo courts, see Daniel A. DeVito &

Michael P Dierks, *Exploring Anew the Attorney–Client Privilege and Work–Product Doctrine in Patent Litigation: The Pendulum Swings Again, This Time in Favor of Protection,* 22 AIPLA Q.J. 103 (1987).

The court found that, even though the invention record may contain technical information or references to prior art, the communication between inventor and attorney was primarily for the purpose of obtaining legal advice because counsel referred to the invention record for the purpose of making patentability determinations. Thus, the entire record was privileged. *Id.* at 805. The court held that as long as the "overall tenor of the document" indicates an implied or express request for legal advice or services it is privileged. *Id.*

▓▓▓ Federal Circuit law is controlling as to issues that are unique to patent law. "[A] procedural issue that is not itself a substantive patent law issue is ... governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to [the Federal Circuit's] exclusive jurisdiction by statute, or if it clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction." *Id.* Because an invention record "is unique to patent law" and "clearly implicates substantive patent law," Federal Circuit law is controlling as to the issue of whether the attorney-client privilege applies to an invention record prepared by inventors and submitted to in-house counsel. *Id.* at 803–804.

### D. The Seventh Circuit

▓▓▓ For procedural issues in a patent case that are not unique to patent law, courts "apply the law of the circuit in which the district court sits." *Id.* at 803. Thus, in deciding whether the attorney-client privilege protects documents that are not unique to patent law and are not affected by substantive patent law, the Court applies the law of the Seventh Circuit. In this case, several attorney-client privilege issues arise surrounding licenses and agreements between the two parties. Contract law is the substantive law at issue in those instances, and patent law is irrelevant to the issue of privilege.

The Seventh Circuit has not specifically accepted or rejected the *Knogo* line of cases. Although this judicial circuit has not ruled directly on the issue of attorney-client privilege in a patent prosecution context, it is helpful, by analogy, to examine how the cir-cuit has ruled on the privilege in other settings.

▓▓▓ As a general rule, the Seventh Circuit uses the Dean Wigmore test to determine attorney-client privilege:

(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*United States v. White,* 950 F.2d 426, 430 (7th Cir.1991) (citing 8 Wigmore § 2292). This circuit strictly confines the scope of the privilege to its "narrowest possible limits" *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983) because it is in "derogation of the search for truth." *White,* 950 F.2d at 430. Thus, "the relationship itself does not create a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." *In re Walsh,* 623 F.2d 489, 494 (7th Cir.1980). As such, the burden is on the party seeking the privilege to establish all the elements. *White,* 950 F.2d at 430. Additionally, the claim of privilege is not a blanket claim, but "must be made and sustained on a question by question or document by document basis." *Id.* Finally, "[t]he privilege 'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.' " *Walsh,* 623 F.2d at 494 (quoting *Fisher v. U.S.,* 425 U.S. 391, 403, 425 U.S. 391, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976)).

In a patent interference proceeding, the Seventh Circuit ruled that the duty of full disclosure to the PTO does not preclude application of the attorney-client privilege in the patent arena. *Natta v. Zletz,* 418 F.2d 633, 636 (7th Cir.1969). The court went on to hold that correspondence between in-house counsel and outside counsel relating to or anticipating an interference proceeding "clearly fall within the ambit of the attorney-client privilege ... Such communications are essentially between the corporation and its outside attorneys." *Id.* at 637. The court

noted that "insofar as inter-attorney communications or an attorney's notes contain information which would otherwise be privileged as communications to him from a client, that information should be entitled to the same degree of protection from disclosure. To hold otherwise merely penalizes those attorneys who write or consult with additional counsel representing the same client for the same purpose. As such, it would make a mockery of both the privilege and the realities of current legal assistance." *Id.* at 637 n. 3.

The court also found written summaries of a meeting held between outside counsel and representatives of the corporate client to be privileged. "Just as the substance of the meeting would be privileged from discovery, these summaries, prepared by one of the corporation's representative, are privileged communications between the corporation and its attorneys." *Id.* at 638.

In a tax situation, where a client provided detailed financial information to his attorney to include in an estate tax return, the Seventh Circuit held that the information was not privileged. *Lawless,* 709 F.2d at 487. The court reasoned that "[w]hen information is transmitted to an attorney with the intent that the information will be transmitted to a third party (in this case on a tax return), such information is not confidential." *Id.* at 487. The court also held that even information that was transmitted that was not actually disclosed on the tax return was not privileged. "If the client transmitted the information so that it *might* be used on the tax return, such a transmission destroys any expectation of confidentiality which might have otherwise existed." *Id.* (Emphasis added). Furthermore, not only does the possibility of disclosure in a public document waive the privilege for any transmitted information used to prepare that document, the privilege is similarly waived with respect to the details underlying that information. *Id.* at 488.

Similarly, in a bankruptcy context where a client transmitted information to an attorney for the preparation of a personal bankruptcy petition, the Seventh Circuit held that the information was not subject to the attorney-client privilege. *White,* 950 F.2d at 431. "When information is disclosed for the purpose of assembly into a bankruptcy petition and supporting schedules, there is no intent for the information to be held in confidence because the information is to be disclosed on documents publicly filed with the bankruptcy court.... [I]nformation imparted to counsel without any expectation of confidentiality is not privileged." *Id.* at 430.

Thus, in a patent context, we can expect that the Seventh Circuit would continue to construe the attorney-client privilege narrowly, allowing protection only for attorney-client communications that are clearly seeking or giving legal advice, while disallowing the privilege for other types of attorney-client communications, such as transmittal of business or technical information, or information that is intended to be disclosed to a third party in unedited form. *See Sneider v. Kimberly–Clark Corp.,* 91 F.R.D. at 3 ("This judicial district ... does urge that the privilege be narrowly construed.... [T]he corporation still cannot secure the privilege's protection for non-legal or business advice."); *Amsted Ind. v. National Castings, Inc.,* 1990 WL 103286 at *2 ("Only those attorney-client communications pertaining to legal assistance and made with the intention of confidentiality are within the ambit of the privilege although it is not essential that such requests by the client for legal advice be expressed." Those which "involve only technical data for use in preparing the patent application are beyond the privilege.").

## E. Rulings on Specific Document Categories

The Court makes the following rulings on the various categories of documents:

■ **1. Drafts of the Patent Application: Privileged.** These are drafts of the specifications, claims, and other parts of the patent application prepared by the attorney. A draft necessarily reflects the communications between a client and his attorney as the attorney attempts to put forth the invention in the best light possible to protect a client's legal right. A patent draft implicitly contains the legal opinion and advice of the attorney regarding the wording of technical specifications, claims, and prior art, and whether an item is included, all of which are

necessary to secure a legal claim for the client. The art of creating verbal packages to persuade others, in this case the PTO, to find favorably for one's client, as opposed to simply dumping upon them a heap of detached, unorganized, technical blizzard of papers, is the work of an attorney. *Amsted Indus., Inc. v. National Castings, Inc.,* 1990 WL 103286 at *4 (N.D.Ill.1990); *Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 116 F.R.D. 533, 543 (N.D.Cal.1987). The Court recognizes that other courts have held that draft patent applications are not subject to the attorney client privilege, reasoning that much of the information contained in the drafts has already made it to the public domain by means of a successful patent prosecution. *Sneider v. Kimberly–Clark Corp.,* 91 F.R.D. 1, 5 (N.D.Ill.1980); *Applied Telematics, Inc. v. Sprint Communications Co. L.P.,* 1996 WL 539595 at *9 (E.D.Penn.1996). This Court respectfully disagrees with these courts, and is of the opinion that they fail to recognize the legal importance that a first-rate patent attorney adds to the legal protection afforded the client by the proper legal draftsmanship of an airtight patent that is successfully and property prosecuted.

Example: PR 438–456

■ **2. Reminder on Review of Patent Application and on Legal Duty of Disclosure: Privileged.** This form document provides legal advice from the patent department to the inventors as to the requirements of the specifications, claims, declarations and duty to disclose to the PTO. It requires the inventor to complete the form and return it to the patent legal department. The Court recognizes that other courts have held form letters containing legal advice to be non-privileged. *Ami/Rec–Pro Inc. v. Illinois Tool Works Inc.,* 46 U.S.P.Q.2d 1369, 1998 WL 70607 (N.D.Ill.1998). However, these documents are distinguishable from those in *Ami/Rec–Pro* in that they contain confidential information that is completed on the form by the client and communicated back to the attorney. Although the uncompleted form is discoverable, the completed form is privileged.

Example: PR 364–366, 367–368, 1158–1160

■ **3. Questionnaire: Privileged.** This form is a checklist reflecting an attorney's dialogue with the client noting that the attorney has reviewed issues and patent requirements with the client. It is a summary of the attorney client communication concerning legal issues. Although the uncompleted form is discoverable, the completed form is privileged. *Natta v. Zletz,* 418 F.2d at 638.

Example: PR 1417–1418

■ **4. Aerospace Patent Portfolio: Not Privileged.** This is a summary of patents, patent applications and invention reports in the aerospace industry owned by Alcoa and other aerospace companies. The document itself states that it contains no legal analysis or legal conclusions, and thus, by definition, falls outside the scope of the privilege. *Walsh,* 623 F.2d at 494. Most of the document is not relevant because it is not related to this lawsuit, and is thus not discoverable. However, those patents that relate to this case, U.S.Patent 4,828,631 on PR 19, 178 and 294 and U.S.Patent 4,594,188 on PR 24, 182 and 299 are discoverable.

Example: PR 1–82, 165–252, 282–363.

■ **5. Interoffice Memoranda Containing Business or Technical Information With No Request for Legal Advice: Not Privileged.** These documents contain information about sales, royalty payments, deliveries, purchasing, competitors, shipping, and various other business data. They contain no request for legal advice, nor is any legal advice given, and therefore, they fall outside the scope of the privilege. *Weeks v. Samsung Heavy Indus. Co.,* 1996 WL 341537 at *3 (N.D.Ill.1996). Many are to or from an attorney, or contain an attorney on the circulation list, although business persons are also included. To the extent that the memo contains an opinion of an attorney, that phrase or sentence is privileged and must be redacted.

Example: PR 83, 85, 134, 114–116, 1013–1014, 1325–1326, 1294–1296, 1291–1293, 773–784

■ **6. Interoffice Memoranda Between Attorney and Client Requesting or**

Giving Legal Advice: Privileged. These documents either request or offer legal advice or strategy from the patent department or outside counsel, and are protected by the attorney-client privilege. *Amsted Indus., Inc. v. National Castings, Inc.*, 1990 WL 103286 at *4. To the extent that the memorandum includes factual information upon which legal advice is sought or given, that information is also privileged. *Weeks v. Samsung Heavy Indus. Co.*, 1996 WL 341537 at *3.

Example: PR 87–88, 91–95, 113, 1201–1202, 1190–1192

■ **7. Attorney's Notes From File: Privileged.** These documents are an attorney's notes memorializing his confidential discussions with his client, necessarily summarizing the confidential legal advice given and information received in order to render that legal advice. As such, they are privileged just as the actual communications themselves would be privileged. *Natta v. Zletz*, 418 F.2d at 638. Some notes are handwritten amendments to a draft patent application that appear to have been given to a secretary to type. As previously discussed, these necessarily contain the rendering of an attorney's advice for the benefit of the client as he drafts an application to secure a legal right for the client. The Court recognizes that other courts have found an attorney's summary of discussions with his client non-privileged, *Sneider v. Kimberly–Clark Corp.*, 91 F.R.D. 1, 6 (N.D.Ill.1980), and respectfully disagrees with that line of reasoning.

Example: PR 117–119

■ **8. Cover Sheets to Faxes and Other Interoffice Memoranda: Not Privileged.** These documents, while from or to attorneys, contain no legal advice, and simply identify the parties to the correspondence, address, and phone and fax numbers. They bear insufficient relation to the securing of legal advice to be accorded attorney-client privilege. *Knogo*, 213 U.S.P.Q. at 942.

Example: PR 120, 1321

■ **9. Invention Control Sheet and Invention Control Report: Privileged.** These documents are completed forms sent by senior management at the inventor's work site to the patent legal department. The form requests the name and address of the inventor, a description and drawings of the subject, when the subject first occurred to the inventor, what is new or different about the development, and whether the invention has been tried, used or sold. The completed form includes a detailed technical description of the invention and testing results. The Court finds that the Invention Control Reports are substantially the same as the invention records described in *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800. The invention control reports are unique to patent law, thus Federal Circuit law controls the issue of privilege. Therefore, the documents are privileged, as they contain an implied request for legal advice and services and furnish in-house counsel with the information from which to form a legal opinion and provide legal services. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800.

Example: PR 1212–1216, 1217–1218, 1435–1441.

■ **10. InterOffice Memoranda Requesting or Relaying Advice from Business and Legal People: Privileged.** These are documents between business personnel responsible for a project that outlines a situation and requests or relays both legal and business advice from the addressee and those on the circulation list, which includes both legal and non-legal personnel. This is one method of simultaneously asking for or relaying legal advice while updating the business people responsible for the operating unit. Management should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege. *Weeks v. Samsung Heavy Indus. Co.*, 1996 WL 341537 at *4.

Example: PR 125, 126, 1011, 1009–1010

■ **11. Letter From Third Party as Attachment to Requests for Legal Advice: Not Privileged.** This document is a letter from a third party competitor of Alcoa that is attached to a request for legal and business advice. Because it is from an outside party, it cannot be confidential, and is therefore not

privileged. *Sneider v. Kimberly–Clark Corp.*, 91 F.R.D. at 4.

Example: PR 127

**12. Drafts of Letters or Contracts That Include Attorney's Comments: Privileged.** These documents are drafts of a letter to, or a contract with, a third party. One letter was included as an attachment to an interoffice memorandum requesting business and legal advice from legal and non-legal personnel on both the draft of the letter and the situation outlined in the memo. The letter contains handwritten notes made by a business person that reflect his discussion with an attorney as to the wording of the letter. Thus, because it contains legal advice, is attached to a privileged document for the purpose of securing legal advice, and is and shared among operating unit personnel responsible for a project, it is within the ambit of the privilege. *Weeks v. Samsung Heavy Indus. Co.*, 1996 WL 341537 at *3, *4. Other documents are drafts of contracts with attorney's own handwritten notes. Although the final executed contract is not privileged because it is communicated with an outside party, all previous drafts prepared by or commented upon by an attorney necessarily contain legal advice from the attorney as to the wording of the contracts for the benefit of the client, and thus are privileged.

Example: PR 128, 1012, 815–816

**13. Letters Between Attorneys Who Share the Same Client: Privileged.** These documents consist of letters, memoranda or e-mail between in-house attorneys or between an in-house attorney and outside counsel concerning the patents at issue. Although communications between in-house counsel are not communications directly to or from the client, it appears implicit in present day litigation with multiple attorneys required for proper representation that attorneys must be allowed to confer with each other regarding the representation of a client on a privileged basis in the same way that clients must be able to discuss the advice of counsel amongst themselves on a privileged basis. *Natta v. Zletz*, 418 F.2d at 637 n. 3. *See also Weeks v. Samsung Heavy Indus. Co.*, 1996 WL 341537 at *4; *Wilstein v. San Tropai Condominium Master Assoc.*, 189

F.R.D. 371 (N.D.Ill.1999) (holding that discussions between management personnel concerning legal advice given by attorney is privileged, even when attorney is not physically present.) To the extent that the communications are between outside counsel and in-house counsel, these are considered communications between attorney and client, with the in-house counsel acting as agent for the corporate client. *Natta v. Zletz*, 418 F.2d at 637. The court has considered the ruling of *C & F Packing Co., Inc. v. IBP, Inc.*, 1997 WL 619848 at *3 (N.D.Ill.1997) in which communication between two of a client's attorneys was found to be non-privileged and respectfully disagrees with the reasoning therein.

Example: PR 1210, 403, 1199–1200, 394–396

**14. Technical Drawings, Sketches, Tables, Test Results: Not Privileged.** These documents are technical drawings and sketches, tables and test results produced from the inventors and engineering departments and sent to the patent department. Some are attachments to letters to in-house patent attorneys in response to a request for information., while others are free-standing. The documents themselves contain no request for legal advice, nor is any given, and thus fall outside the ambit of the privilege. *Amsted Indus., Inc. v. National Castings, Inc.*, 1990 WL 103286 at *4.

Example: PR 414–416

**15. InterOffice Memoranda Between Paralegal and Attorney within Patent Department: Privileged.** These are one page form documents between in-house patent attorneys and in-house paralegals responsible for processing a file that is to be submitted to the PTO. The documents contain legal advice regarding whether or not a list of disclosures is to be made to the PTO as it pertains to a particular patent, and is thus protected by the attorney-client privilege. *Amsted Indus., Inc. v. National Castings, Inc.*, 1990 WL 103286 at 4. However, the uncompleted form is not privileged.

**16. Documents Relating to the September 1, 1990 Settlement and Licensing Agreements between Alcoa and Reynolds:**

**Privileged.** These documents concern a settlement of litigation between Alcoa and Reynolds regarding the 7X50 technology and various licensing agreements. The documents include letters between Alcoa's in-house counsel and management regarding the litigation and licenses, drafts of the settlement agreement and licensing agreements, and inter-office memos between Alcoa management discussing legal advice given. The settlement together with the licensing agreements were all part of an all-or-nothing package deal that was entered into between Alcoa and Reynolds to resolve a patent infringement lawsuit between the two companies. As such, they are protected by both attorney-client privilege and the work product doctrine. *Weeks v. Samsung Heavy Indus. Co.*, 1996 WL 341537 (N.D.Ill.1996); *Applied Telematics, Inc. v. Sprint Communications Co. L.P.*, 1996 WL 539595 (E.D.Pa.1996).

## II. FOREIGN ATTORNEY–CLIENT PRIVILEGE

### A. Attorney–Client Privilege Relating to Foreign Attorneys

■ Alcoa is claiming attorney-client privilege on communications between in-house counsel and foreign attorneys and patent agents in connection with the prosecuting of patents in foreign patent offices. The countries include the United Kingdom, France, Canada, Germany, and Japan. Although generally "no communication from patent agents, whether American or foreign, are subject to the attorney-client privilege in the United States ... the privilege may extend to communications with foreign patent agents related to foreign patent activities if the privilege would apply under the law of the foreign country and that law is not contrary to the law of this forum." *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 143 F.R.D. 611, 616 (E.D.N.C.1992).

The rule is summarized as follows:
[I]f the communication is actually between the client and the foreign patent agent and the attorney merely serves as a conduit for the information, the communication is not privileged unless under the foreign law communications between patent agents and clients are privileged. Similarly, if the communication is actually between the attorney and the foreign patent office, and

the foreign patent agent merely serves as a conduit, the communication is not privileged unless direct communication between the attorney and the foreign patent office is confidential.

Where the communication consists not merely of information to be passed on to the foreign patent office, but is substantive, the result is different. If the foreign patent agent was primarily a functionary of the attorney, the communication is privileged to the same extent as any communication between an attorney and a non-lawyer working under his supervision, if the foreign patent agent is engaged in the lawyering process, the communication is privileged to the same extent as any communication between co-counsel.

*Burroughs*, 143 F.R.D. at 616 (citing *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, 1987 WL 12919 (N.D.Ill.1987)).

■ Therefore, if an attorney-client privilege exists in a country, then comity requires us to apply that country's law to the documents at issue. *Alpex Computer Corp. v. Nintendo Ltd.*, 1992 WL 51534 at *2 (S.D.N.Y.1992).

■ The burden is upon Alcoa to "establish that, as to each country, the attorney-client privilege extends to patent attorneys and/or patent agents and that the communications were intended to be confidential and not merely passed on to a patent examiner." *Burroughs*, 143 F.R.D. at 617. Furthermore, the privilege should be strictly construed and all doubts should be resolved in favor of disclosure. *Id.*

■ Alcoa used American firms, including the New York firm of Ladas & Parry and the California attorney John P. Taylor, for the prosecution of many foreign patents, therefore the American attorney-client privilege applies. Regarding communications for the French patent prosecution, Alcoa used the French firm of Cabinet Lavoix. French law provides that "communications between patent agents and clients are confidential," however, communications between foreign attorneys and the French Patent Office are not confidential. *Baxter Travenol*, 1987 WL 12919 at *8. Regarding the prosecution of the

German patents, the German patent attorney firm of Gruneker, Kinkeldey, Stockmair & Partner was used. Under German law, attorney-client privilege protects "all communications between a German patent attorney and his client which occur in the rendition of legal services for the client, the client and the attorney may refuse to disclose such communications in a court proceeding." *Santrade, Ltd. v. General Electric Co.*, 150 F.R.D. 539, 547 (E.D.N.C.1993). Thus, communications between Alcoa and the German patent attorneys are protected as they relate to the prosecution of patents, however, communications from the attorney to the German Patent Office are not privileged. *Baxter Travenol*, 1987 WL 12919 at *9.

■ Regarding the prosecution of patents in other countries the burden rests on Alcoa to show that the documents are privileged. Alcoa has provided no evidence of foreign law giving any indication of the attorney-client privilege law of the country at issue. Similarly, Alcoa has provided no English translations of several documents for which they claim privilege, making it difficult, if not impossible, for the Court to determine whether the attorney-client privilege would, in fact, even apply. The foreign languages include French, German, and Japanese. Therefore, Alcoa has failed to meet their burden, and the Court orders these documents produced unless Alcoa furnishes to the Court within twenty-one days an English translation of the document, if applicable, and an affidavit of a licensed attorney learned in the laws of the country at issue stating the law of attorney-client privilege of that country and supporting the privilege asserted.

## B. Rulings on Specific Document Categories

The Court makes the following rulings on the various categories of documents relating to prosecution of foreign patents:

■ **1. Documents Between In–House and Outside American Attorneys Regarding Foreign Patents Giving Advice or Receiving Updates on the Status of Foreign Filings: Privileged** These documents are correspondence between Alcoa's in-house counsel and outside American attorneys used in the filing of foreign patents. Several documents from outside counsel advise Alcoa on foreign patent law, such as filing deadlines in the foreign patent office, and request instruction from Alcoa as to how they wish to proceed. The documents often disclose action taken with regards to the foreign filing on Alcoa's behalf. Documents from in-house counsel often give instructions to outside counsel regarding action to take on Alcoa's behalf, such as a request for examination or filing. These documents either give legal advice, request legal advice, or summarize actions that have been taken to secure legal rights in the back and forth exchange between a client and his attorney that is typical of those communications protected by the attorney client privilege. *Natta v. Zletz*, 418 F.2d 633.

Example: PR 1509, 1528, 1531, 1576

■ **2. Documents Between In–House and Outside German Attorneys Regarding Foreign Patents Giving Advice or Receiving Updates on the Status of Foreign Filings: Privileged.** These documents are correspondence between Alcoa's in-house counsel and outside German attorneys used in the filing of foreign patents. Several documents from outside counsel advise Alcoa on foreign patent law, such as filing deadlines in the foreign patent office, and request instruction from Alcoa as to how they wish to proceed. The documents often disclose action taken with regards to the foreign filing on Alcoa's behalf. Documents from in-house counsel often give instructions to outside counsel regarding action to take on Alcoa's behalf, such as a request for examination or filing. These documents either give legal advice, request legal advice, or summarize actions that have been taken to secure legal rights in the back and forth exchange between a client and his attorney that is typical of those communications protected by the attorney client privilege. *Santrade, Ltd. v. General Electric Co.*, 150 F.R.D. 539 (E.D.N.C.1993)

Example: PR 1616, 1617, 1618, 1621, 1622

■ **3. Communication Between German Patent Attorney and German Patent**

**Office: Not Privileged.** These were represented to the Court in oral arguments as the German translation of a letter sent to Alcoa's in house legal counsel, however, upon close inspection, it is clear that these documents consist of 1) a letter in German to the German Patent Office from the German Patent Attorney requesting that tables that were originally filed be replaced by corrected copies and 2) the actual corrected tables. Because they have been sent to the German Patent Office in the anticipation of becoming public domain, there is no expectation of confidentiality and are thus, not privileged. *Baxter Travenol,* 1987 WL 12919.

Example: PR 1623–1625

**4. Documents Between In–House and Outside French Attorneys Regarding Foreign Patents Giving Advice or Receiving Updates on the Status of Foreign Filings: Privileged.** These documents are correspondence between Alcoa's in-house counsel and outside French attorneys used in the filing of foreign patents. Several documents from outside counsel advise Alcoa on foreign patent and licensing law. These documents either give legal advice, request legal advice, or summarize actions that have been taken to secure legal rights in the back and forth exchange between a client and his attorney that is typical of those communications protected by the attorney client *privilege. Baxter Travenol,* 1987 WL 12919 at 8.

Example: PR 1518

**5. Communications Between Alcoa's In–House Counsel and Other Foreign Outside Counsel, and Between Outside American Counsel and Foreign Counsel: Not Privileged.** Alcoa bears the burden of establishing an attorney-client privilege for each and every country for which it claims the privilege. Alcoa has submitted no evidence of attorney-client privilege in the countries of Japan and Canada, and thus has not sustained its burden. Alcoa also has submitted no English translations of many German, French and Japanese documents, making a determination of the substance of the document difficult if not impossible. The Court orders these documents produced unless, within twenty-one days, Alcoa provides the Court with English translations of the documents, if applicable, and affidavits from legal experts in the laws of these countries stating the applicable law of the attorney-client privilege, and demonstrating that the law supports the privilege asserted. *Burroughs Wellcome Co. v. Barr Laboratories, Inc.,* 143 F.R.D. at 617.

Example: PR 1705, 1712, 2471–2474, 2475–2478

### III. WORK PRODUCT DOCTRINE

The work product doctrine, announced in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), has been applied to protect otherwise discoverable documents and tangibles, including an attorney's thoughts and mental impressions, made in anticipation of litigation. It has been codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. The relevant part is as follows:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of the materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

FED.R.CIV.P. 26(b)(3).

Courts have analyzed the work product privilege in two contexts—fact work product and opinion work product. Both are generally protected and can be discovered only in limited circumstances. *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir. 1994). In either case, the burden rests on the party asserting the doctrine to establish the necessary elements. *Logan v. Commercial Union Insurance Co.,* 96 F.3d 971, 976 (7th Cir.1996). In the fact work product context, the burden then shifts to the moving

side to demonstrate a substantial need for the information, and that it would be exceedingly difficult to obtain the information any other way. *Id.* In the patent context, other courts in this circuit have held that "a party seeking discovery of otherwise privileged documents must prove a prima facie case of common law fraud." *Thermos Co. v. Starbucks Corp.*, 1999 WL 203818 at *2 (N.D.Ill. 1999). In that case, the defendants claimed inequitable conduct during the plaintiff's original patent prosecution and subsequent reexamination due to plaintiff's intentional withholding of prior art references from the PTO. *Id.* at *1. The court held, "While a breach of the duty of candor constitutes inequitable conduct, a mere showing of inequitable conduct is not sufficient to pierce the ... work product privilege." *Id.*

Opinion work product is even more scrupulously protected. *In re Grand Jury Proceedings*, 33 F.3d at 348. The Supreme Court has declined to rule whether or not this immunity is absolute, and, if not, the showing required to overcome a presumption of protection. *Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981). The Seventh Circuit also has not ruled directly on this issue. *Logan v. Commercial Union Insurance Co.*, 96 F.3d at 976 n. 4. However, in dicta, the court indicated that, under some circumstances, opinion work product may be discoverable. *Id.* While there exists a "heightened protection afforded an attorney's mental impressions and opinion," the Seventh Circuit came short of stating that the protection was absolute. *Id.* Suffice to say immunity from discovery for an attorney's mental impressions, conclusions, opinions, or legal theories is absolute or nearly absolute. *Bio–Rad Laboratories, Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116, 121 (N.D.Cal.1990). In those circuits that do allow discovery for these type of documents, a "compelling showing" is required to produce the documents. *Id.*

Plaintiff has not demonstrated a substantial need for the documents that Defendant asserts are protected by the work product doctrine, nor has Plaintiff demonstrated that it would suffer undue hardship in obtaining substantially the same information in some other way. Most of the information sought is technical information that has been or-

dered produced or for which they can inquire of the inventors themselves. As to the attorney's mental impressions, conclusions, opinions, or legal theories, Plaintiff has not demonstrated a sufficient showing that would justify the production of these documents. Thus, the issue surrounding each document for which the doctrine is claimed is whether Defendant can demonstrate that the documents were prepared in anticipation of litigation. More specifically, the questions presented in this case are 1) at what stage of the patent process is there anticipation of litigation, and 2) what constitutes litigation in the patent context?

### A. Rulings in the Seventh Circuit

As a general matter, "the test [for 'in anticipation of litigation'] should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir.1983). The mere fact that litigation does, in fact, ensue does not ensure the prepared materials are work product, as the doctrine does not come in to play simply because there is a remote possibility of some future litigation. *Id.* at 1118. Materials developed in the ordinary course of business do not rise to the status of work product unless some articulable claim has arisen that is likely to lead to litigation. *Id.* at 1120. The articulable claim likely to lead to litigation must pertain to this particular opposing party, not the world in general. *International Insurance Co. v. Lloyd's of London*, 1990 WL 205461 at *4 (N.D.Ill.1990). Thus, merely any anticipated litigation does not suffice. *Id.* Materials created in the ordinary course of business are generally those that would have been created whether litigation had been anticipated or not. *Id.* at *6.

The Seventh Circuit has stated that the duty of full disclosure to the PTO does not preclude application of the work product doctrine in the patent arena. *Natta v. Zletz*, 418 F.2d at 636. In that case, the court held that notes and memoranda prepared by in-house counsel and outside counsel in connection

with an interference proceeding and addressed to a file or limited intra-office circulation constituted attorney's work product. *Id.* at 637–638. Likewise, intra-office memoranda and correspondence prepared by in-house counsel relating to the drafting of motions or other papers to be filed in an interference proceeding were held to be work product. *Id.* at 638.

■ Like the attorney-client privilege, the work product doctrine significantly restricts the scope of discovery and must be narrowly construed in order to aid in the search for the truth. *Avery Dennison Corp. v. UCB Films PLC,* 1998 WL 703647 at *5 (N.D.Ill.1998). In this judicial circuit, preparation of a patent application for prosecution has generally not been held to be in anticipation of litigation, as it is primarily an ex parte administrative, not an adversarial, proceeding. *Oak Indus. v. Zenith Electronics Corp.,* 687 F.Supp. 369, 374 (N.D.Ill.1988); *Avery Dennison Corp. v. UCB Films PLC,* 1998 WL 703647 at *6. Specific items relating to the patent application process that were not deemed work product included decisions regarding which specifications to include in the patent application, decisions to use certain terms in the original patent application, and technical information from the client to attorney used for the purpose of preparing a patent application. *Avery Dennison Corp. v. UCB Films PLC,* 1998 WL 703647 at *6, *7.

However, documents produced in preparation for a patent reexamination proceeding when related litigation was subsequently initiated in the federal courts have been held to be made in anticipation of litigation, and thus protected by the work product doctrine. *Oak Indus. v. Zenith Electronics Corp.,* 687 F.Supp. at 375; *see also Applied Telematics, Inc. v. Sprint Communications Co.,* 1996 WL 539595 at *4. In these cases, the court reasoned that, regardless of whether the reexamination proceeding was initiated by a competitor or the patent holder, "the reexamination proceeding is an adversarial proceeding, similar to 'litigation', to which the work product doctrine applies." *Id.* at *4. Documents prepared for an interference proceeding were also held to be protected. *Electronic Memories & Magnetics Corp. v. Control Data Corp.,* 188 U.S.P.Q. 449 (N.D.Ill.1975).

In a case for sanctions surrounding a party's refusal to produce patent applications already filed with the PTO, one court even went so far as to say that "given that there is precedent for extending work-product immunity to draft patent applications prepared in anticipation of litigation, it is not unreasonable to extend the benefit of that immunity to the applications themselves." *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 1995 WL 389822 at *12 (N.D.Ill.1995). The court went on to state that "production of a pending patent application is not a foregone conclusion" and that the work product claim "may be novel but it is clearly not frivolous." *Id.* The court thus opened the door to the possibility that even applications created for ex parte patent proceedings may be protected by the work product doctrine.

In the present case, there are two patents at issue. The first patent, U.S.Patent 4,828,-631, entitled "High Strength Aluminum Alloy Resistant to Exfoliation and Method of Making", was filed August 13, 1987. A patent was issued May 9, 1989 and will expire August 13, 2007. The second patent, U.S.Patent 4,954,188 also entitle "High Strength Aluminum Alloy Resistant to Exfoliation and Method of Making", was filed December 7, 1988. A patent was issued September 4, 1990 and will expire December 7, 2008. Alcoa is owner of both of the patents. Plaintiff contends that both patents are invalid because Alcoa failed to disclose prior art which was material to the patent claims of the pending applications, specifically a United Kingdom Patent Application 8236489 filed December 22, 1982 by Aluminum Company of America, Alcoa's predecessor, and Canadian Patent No. 1045528 filed August 26, 1974 and issued January 1, 1979 to Aluminum Company of America. The present action was filed on June 11, 1999. There is no indication that any reexamination proceedings or interference proceedings took place regarding either of the patents at issue.

**B. Rulings of This Court**

■ **1. Documents dated prior to the 1987 filing of U.S.Patent 4,828,631: Not Work Product.** These documents consist primarily of inter-office memos to which at-

torneys have been copied that contain business information. They are protected by neither the attorney client privilege nor the work product doctrine. Many of the documents examined were dated prior to the 1987 filing of the patent application of U.S.Patent 4,828,631. Some are also dated prior to the filing of the applications of the foreign patents. These are too distant in time from the present litigation to be considered in anticipation of litigation, and are therefore not attorney work product. *Oak Indus. v. Zenith Electronics Corp.*, 687 F.Supp. at 374.

Example: 1294–1296, 1291–1293, 1299, 412, 411

**■ 2. Technical Information Prepared for Patent Application: Not Work Product.** These are documents prepared for the patent application that include such things as technical information, sketches, drawings, graphs, and test results that cannot be said to be prepared in anticipation of this litigation. *Avery Dennison Corp. v. UCB Films PLC*, 1998 WL 703647 at *7. Furthermore, they would have been created with or without this litigation, and are considered *documents created in the ordinary course of business, not work product. International Insurance Co. v. Lloyd's of London*, 1990 WL 205461 at *6.

Example: PR 1181–1189

**3. Drafts of Patent Applications or Amendments Prepared in Preparation for Appeal to the Board of Patent Appeals and Interferences: Attorney's Work Product.** The issue of whether materials prepared for appeal to the Board of Patent Appeals and Interferences after a Final Rejection by the PTO examiner is a matter of first impression. This Court has found no other court, either in the Seventh or other judicial circuit, that has had occasion to address this point.

Briefly stated, the life cycle of a patent application through the PTO is as follows: After a patent application has been filed, an examiner in the PTO either issues a patent or rejects the application, stating the reason for rejection in an Office Action. The applicant has six months to respond, in the form of an amendment, to the rejection. The examiner then considers the filed amendment and either issues a patent or another rejec-

tion. This cycle can continue several times until the examiner submits a final rejection, to which the applicant must file a notice of appeal with the Board of Patent Appeals and Interference within six months to avoid abandonment of the patent. After the applicant, now called the appellant, has filed his notice of appeal, he has two months to file a brief on the appeal, along with the required fee, in which he must set forth his arguments. The examiner then submits his answer to the appellant's brief. The appellant may file a reply brief or a request for an oral hearing within one month of the filing of Examiner's answer. The Board of Patent Appeals and Interferences then arrives at a decision. If the decision is adverse to the appellant, the appellant may appeal within sixty days to the Court of Appeals for the Federal Circuit or may commence a civil action before the District Court for the District of Columbia. The District Court's decision may then be appealed to the Federal Circuit. RONALD B. HILDRETH, PATENT LAW: A PRACTIONER'S GUIDE § 2.4 (3rd ed.1998) (summarizing 35 U.S.C. § 131–134, 141, 145).

The reexamination proceeding, which has been held to constitute "litigation" for the purposes of the work product doctrine, is similar to the final appeals proceeding in that although both are ex parte proceedings, neither is "nowhere nearly as non-adversarial and as ex parte as is a typical application for initial issuance of a patent." *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 544 (N.D.Cal.1987). "[T]he reexamination proceeding itself is adversarial." *Applied Telematics, Inc. v. Sprint Communications Co.*, 1996 WL 539595 at *5. In a reexamination proceeding, either the patent holder or a challenger can initiate the reexamination to determine the validity of an existing patent. If the examiner finds that there is a "substantial new question of patentability" the patent holder has a two month period in which he may respond. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. at 545. If a challenger has initiated the process, he is given an opportunity to reply to the response. "If the patent holder elects not to file such a response, the process moves into an ex parte phase that is like the prosecution of an application for

initial issuance of a patent, except that the PTO sends to the challenger copies of Office Action and of responses submitted by the owner." *Id.* at 545.

In both the appeal process and the reexamination proceedings, the patent applicant or holder is in a defensive position and in an adversarial relationship to the examiner. Also, in both situations, the attorney is in the position of drafting intricate legal documents, neatly arranging raw technical facts into verbal packages, and practicing the art of a legal wordsmith to persuade the examiner to make a favorable finding for his client. As compared to the initial application request in which the applicant and the examiner are on fairly neutral grounds, the appeal proceeding and the reexamination proceeding force a heightened need of persuasiveness on the part of the attorney, and an increased level of adversity between the applicant and the examiner. All of these are characteristics of litigation.

■ The Court finds that an appeal before the Board of Patent Appeals and Interferences, although an ex parte proceeding, is of an adversarial nature sufficient to constitute "litigation", thus, warranting application of the work product doctrine to attorney materials made in anticipation thereof. This construction is further supported by the fact that the individual filing the patent application, previously referred to as applicant, is referred to as an appellant after the filing of a notice of appeal. Of course, any appeal thereafter to the Federal Circuit or civil action before the District Court for the District of Columbia would also be protected by the work product doctrine.

■ These documents are drafts of patent applications or amendments with handwritten notes by attorneys as to the wording of the drafts. At the time these drafts were made, an appeal was pending before the Board of Patent Appeals and Interferences due to a patent examiner's final rejection. Therefore, these documents are attorney's work product and are protected from discovery. They also are protected by the attorney-client privilege as they necessarily contain legal advice. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. at 543.

Example: PR 438–456.

■ **4. Attorney's Handwritten Notes to File Noting Contract With Reynolds: Work Product.** These documents are handwritten notes by in-house counsel dated January 7, 1995 that references a breach of the license agreement with Reynolds, which McCook acquired, that gave rise to this litigation. It, therefore, can be said to be prepared in anticipation of litigation and is protected by the work product doctrine. *Sneider v. Kimberly–Clark Corp.*, 91 F.R.D. at 6.

Example: PR 572–574

■ **5. Attorney's Handwritten Notes Referencing Legal Strategies Surrounding This Litigation: Work Product.** These documents are handwritten notes by in-house counsel that make reference to various legal options and strategies pursuant to this litigation. It was clearly made for the purpose of addressing litigation anticipated with McCook and contains an attorney's legal opinions and mental impressions. It is therefore protected by the work product doctrine. *Applied Telematics, Inc. v. Sprint Communications Co.*, 1996 WL 539595 at *8.

Example: PR 803.

■ **6. Letters Between Patent Attorney and Inventors Discussing Final Rejection and Possible Appeal: Work Product.** These documents are communications between in-house patent attorney and inventors referencing a final rejection of a patent application and potential options to overcome the objections of the examiner in an appeals proceeding. They would not have been made but for the appeals proceeding, and thus cannot be characterized as created in the ordinary course of business. They were prepared in anticipation of the appeals process, which this Court finds sufficiently adversarial to constitute litigation. As such, they are work product. *Applied Telematics, Inc. v. Sprint Communications Co.*, 1996 WL 539595 at *8.

Example: PR 1179–1180, 1168–1170

■ **7. Letter from Attorney to Engineering Division Manager in Response to**

Notification of Potential Patent Infringement: **Work Product.** This document is from in-house counsel in response to a notification by the engineering department manager to the attorney of a potential patent infringement associated with this litigation. Considering the totality of the circumstances and other communications, it was made in anticipation of litigation, and is work product. It is also protected by the attorney-client privilege as it contains legal advice regarding the patent infringement. *Sneider v. Kimberly–Clark Corp.,* 91 F.R.D. at 6.

Example: PR 1163

■■■■ 8. **Documents Relating to the September 1, 1990 Settlement and Licensing Agreements between Alcoa and Reynolds: Privileged.** These documents concern a settlement of litigation between Alcoa and Reynolds regarding the 7X50 technology and various licensing agreements. The documents include letters between Alcoa's in-house counsel and management regarding the litigation and licenses, drafts of the settlement agreement and licensing agreements, and inter-office memos between Alcoa management discussing legal advice given. The settlement together with the licensing agreements were all part of an all-or-nothing package deal that was entered into between Alcoa and Reynolds to resolve a patent infringement lawsuit between the two companies. The work product doctrine applies in a subsequent case even if the documents were prepared in a prior litigation. *Applied Telematics, Inc. v. Sprint Communications Co. L.P.,* 1996 WL 539595 at *5. The two cases need not be related as long as the documents were created by the parties to subsequent litigation. *Id.* For purposes of this opinion as applied to the work product doctrine, McCook is the successor to Reynolds, and is considered a party in both lawsuits. As such, they are protected by both attorney-client privilege and the work product doctrine. *Weeks v. Samsung Heavy Indus. Co.,* 1996 WL 341537 (N.D.Ill.1996); *Applied Telematics, Inc. v. Sprint Communications Co. L.P.,* 1996 WL 539595 (E.D.Pa.1996).

## IV. CONCLUSION

For the foregoing reasons, **the Court grants in part and denies in part** Plaintiff's Motion and Supplemental Motion to Compel Non–Privileged Documents.